

## Fourth Court of Appeals

### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-14-00325-CV

**IN THE INTEREST OF S.M.E.**

From the 166th Judicial District Court, Bexar County, Texas
Trial Court No. 2013-PA-00899
Honorable Charles E. Montemayor, Judge Presiding

Opinion by:     Karen Angelini, Justice

Sitting:          Karen Angelini, Justice
                 Sandee Bryan Marion, Justice
                 Patricia O. Alvarez, Justice

Delivered and Filed:  October 8, 2014

AFFIRMED

Shawni E.[1] appeals the trial court's order terminating her parental rights to her daughter,

S.M.E. She argues the evidence was legally and factually insufficient to support the trial court's

finding that termination of her parental rights was in the best interest of S.M.E. We affirm.

### BACKGROUND

On April 12, 2013, the Department of Family and Protective Services filed a petition for

protection of a child for conservatorship and for termination in a suit affecting the parent-child

relationship, alleging that seven-month-old S.M.E. was the victim of neglect. Appellant Shawni E.

signed a service plan. After several hearings, trial was set for February 13, 2014. On February 7,

---

[1] To protect the identity of the child, we refer to the child's mother by her first name and last initial, and to the child by her initials. *See* TEX. FAM. CODE ANN. § 109.002(d) (West 2014).

2014, Shawni E. filed a motion for continuance requesting additional time to complete her service plan. The trial court granted her motion for continuance and set trial for April 10, 2014. Trial was then reset for April 21, 2014. At trial on April 21, 2014, Shawni E.'s attorney announced "not ready" and again asked for additional time for Shawni E. to complete the services on her service plan. The trial court denied her request and the cause proceeded to trial.

Christian Markham, the caseworker assigned, testified that S.M.E. was a year old and was currently placed in a foster home. S.M.E. had come into the care of the Department because of "instability." "Mom and [S.M.E.] were homeless," and "[t]here were allegations that [S.M.E.] was left for several hours on end." Markham testified that if the parents' parental rights were terminated, the "long-range plan" for S.M.E. would be "unrelated adoption by the current caregivers."

According to Markham, Shawni E., the twenty-year-old mother, had not completed a single task on her service plan. Markham testified that Shawni E. "has a history of becoming involved with men with lots of factors that might jeopardize her child." "The thought was that counselling would help her work through those issues." However, according to Markham, Shawni E. did not complete the counselling sessions as ordered by her service plan. Further, Markham testified that the parenting classes ordered would have helped Shawni E. gain knowledge to be able to properly take care of S.M.E., but Shawni E. did not complete her parenting classes. Markham further testified that Shawni E. was permitted to visit S.M.E. weekly and that visitation would have allowed the Department to observe whether Shawni E. was gaining the parenting skills necessary to take care of S.M.E. However, in the three months before trial, Shawni E. visited S.M.E. only once. Markham testified that prior to that time, Shawni E. had been visiting S.M.E. about half of the time. Thus, Markham characterized the level of contact between Shawni E. and S.M.E. as "sporadic." Markham testified that Shawni E. "moved to Midland pretty abruptly and a courtesy

worker referral was completed so that she could do services in Midland." However, Shawni E. did not take advantage of the referral. According to Markham, Shawni E. had not demonstrated her ability to provide S.M.E. with a safe and stable home environment. Thus, Markham testified that it was in S.M.E.'s best interest for the trial court to terminate the parent-child relationship. Markham testified that over the past year, Shawni E. "has demonstrated that she can't care for this child and she can't care for herself." "After the move to Midland this year, she followed that with another move to San Angelo . . . ." Shawni E. "hasn't been able to show that she can keep a job [or] that she can keep a residence, and those things are necessary to care for a one year old." Because Shawni E. had resided in four different places in the last year, Markham characterized Shawni E. as having an "unstable" residence. Shawni E. had been living with an ex-boyfriend in Midland. Markham characterized this residence as not "safe or stable" because Shawni E.'s ex-boyfriend "had some very serious drug-related criminal history." Markham testified that although the Department had provided Shawni E. with services that would assist her, Shawni E. had not provided the Department with any plan as to how she could care for S.M.E. Markham testified that Shawni E. had never paid any child support and that the reason she gave for missing visitation with S.M.E. was "not having transportation."

Markham testified that she was aware Shawni E.'s mother had been willing to be a support system for Shawni E., but that the Department could not allow Shawni E. to live with her mother "because of her mother's previous CPS history." Markham also testified that in regard to long-term goals for S.M.E., Shawni E. had asked her father to be studied by the Department, but the Department had not approved her father because of his criminal and CPS history. When asked whether Shawni E. had stable employment, Markham testified that although Shawni E. claimed she did, she had not provided proof to the Department.

Shawni E. then testified and admitted that she had not completed her service plan but claimed that she "was in the process of finishing." She testified that she missed so many visits with S.M.E. because she was living in Midland and could not get transportation back and forth every week. Shawni E. testified that she had not paid any child support because she "was under the impression that the child support wasn't going to be held against [her]." Shawni E. testified that she believed she "should have one more shot with all the curveballs [she had] had thrown at [her]." She explained that one of these "curveballs" was when she "had to move from San Antonio to Midland."

According to Shawni E., when the case began, she had been living with her mother. She had wanted to stay with her mother, who constituted her main support system, but the Department would not approve of these arrangements. So, Shawni E. "had to find other options." She testified she worked at Wal-Mart for three months and then worked at one restaurant in San Antonio for six months. When she moved to Midland, she worked in another restaurant. When asked why she had moved to Midland, Shawni E. testified she had been living with an ex-boyfriend in San Antonio. However, the Department's caseworker told her it was not safe for her to be living with him because he had a criminal history. Shawni E. testified that she "tried to ask him to let me have the apartment [but] he refused to." Shawni E. agreed that it was not the place of residence the Department had a problem with–it was her choice of roommates. And, Shawni E. agreed that the Department never forced her to move from San Antonio to Midland. Shawni E. also admitted that the Department's claim she attended only half of the visitations was "about right."

Shawni E. asked the trial court to give her more time to complete services, explaining that she did "want to complete this." She testified, "I've had a bunch of sidetracks and I haven't completely been focused, but I do want to try to get to finish this." Shawni E. testified it was in S.M.E.'s best interest for her to have more time to complete services.

**TERMINATION OF PARENTAL RIGHTS**

Parental rights may be terminated only upon proof of clear and convincing evidence that (1) the parent has committed an act prohibited by section 161.001(1) of the Texas Family Code, and (2) termination is in the best interest of the child. *See* TEX. FAM. CODE ANN. § 161.001 (West 2014). On appeal, Shawni E. challenges only the best-interest finding, arguing the evidence is legally and factually insufficient.

When the legal sufficiency of the evidence is challenged, we look at all the evidence in the light most favorable to the trial court's finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009). "To give appropriate deference to the factfinder's conclusions and the role of a court conducting a legal sufficiency review, looking at the evidence in the light most favorable to the judgment means that a reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *Id.* (citation omitted). "A corollary to this requirement is that a court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *Id.* (citation omitted). "If, after conducting its legal sufficiency review of the record evidence, a court determines that no reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true, then that court must conclude that the evidence is legally insufficient." *Id.* at 344-45 (citation omitted); *see also In re K.M.L.*, No. 12-0728, 2014 WL 4252270, at *11 (Tex. Aug. 29, 2014) ("Only if no reasonable [factfinder] could form a firm belief or conviction that termination of [appellant]'s parental rights was in [the child]'s best interest can we conclude that the evidence is legally insufficient.").

When a parent challenges the factual sufficiency of the evidence on appeal, we look at all the evidence, including disputed or conflicting evidence. *In re J.O.A.*, 283 S.W.3d at 345. "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited

in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.* (citation omitted); *see also In re A.B.*, No. 13-0749, 2014 WL 1998440, at \*3 (Tex. May 16, 2014). In reviewing termination findings for factual sufficiency, we give due deference to the factfinder's findings and do not supplant its judgment with our own. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006); *see In re A.B.*, 2014 WL 1998440, at \*3 (explaining that while there is a heightened standard of review in parental termination cases, a "court of appeals must nevertheless still provide due deference to the decisions of the factfinder, who, having full opportunity to observe witness testimony first-hand, is the sole arbiter when assessing the credibility and demeanor of witnesses").

When the trial court considers factors related to the best interest of the child, "the prompt and permanent placement of the child in a safe environment is presumed to be in the child's best interest." TEX. FAM. CODE ANN. § 263.307(a) (West 2014). And, in determining whether the child's parents are willing and able to provide the child with a safe environment, the court should consider the following:

- the child's age and physical and mental vulnerabilities;

- the frequency and nature of out-of-home placements;

- the magnitude, frequency, and circumstances of the harm to the child;

- whether the child has been the victim of repeated harm after the initial report and intervention by the Department or other agency;

- whether the child is fearful of living or returning to the child's home;

- the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home;

- whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home;

- whether there is a history of substance abuse by the child's family or others who have access to the child's home;

- whether the perpetrator of the harm to the child is identified;

- the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision;

- the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time;

- whether the child's family demonstrates adequate parenting skills, including providing the child and other children under the family's care with (1) minimally adequate health and nutritional care; (2) care, nurturance, and appropriate discipline consistent with the child's physical and psychological development; (3) guidance and supervision consistent with the child's safety; (4) a safe physical home environment; (5) protection from repeated exposure to violence even though the violence may not be directed at the child; and (6) an understanding of the child's needs and capabilities; and

- whether an adequate social support system consisting of an extended family and friends is available to the child.

*Id.* § 263.307(b).

In addition, courts may consider other nonexclusive factors in reviewing the sufficiency of the evidence to support the best-interest finding, including (1) the desires of the child, (2) the present and future physical and emotional needs of the child, (3) the present and future emotional and physical danger to the child, (4) the parental abilities of the persons seeking custody, (5) the programs available to assist those persons seeking custody in promoting the best interest of the child, (6) the plans for the child by the individuals or agency seeking custody, (7) the stability of the home or proposed placement, (8) acts or omissions of the parent which may indicate the existing parent-child relationship is not appropriate, and (9) any excuse for the parent's acts or omissions. *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976).

In her brief, Shawni E. recognizes that S.M.E. was just nineteen months of age at trial, and thus was too young to vocalize her wishes. Shawni E. states that when S.M.E. was removed from

Shawni E.'s care, S.M.E. was not ill, malnourished, or physically abused. Further, Shawni E. states that S.M.E. has no special needs atypical of a nineteen-month-old child. Shawni E. emphasizes that at the time of trial, she had a home and was employed. According to Shawni E., the appellate record is devoid of evidence suggesting that (1) she was unable or unwilling to provide for S.M.E.'s medical, physical, or emotional needs now or in the future; (2) S.M.E. would be in emotional or physical danger should she be returned to Shawni E. now or in the future; (3) Shawni E. was inappropriate during any of her visits with S.M.E.; (4) Shawni E. lacks the ability to properly parent S.M.E. now or in the future; and (5) the parental abilities of the individuals seeking custody. While it may be true that the record is devoid of evidence on certain factors, the list of factors relating to the best interest of a child is not exhaustive, and evidence is not required on all of the factors to support a finding terminating a parent's rights. *Holley*, 544 S.W.2d at 372; *In re D.R.A.*, 374 S.W.3d 528, 533 (Tex. App.—Houston [14th Dist.] 2012, no pet.). Indeed, evidence supporting only one *Holley* factor may be sufficient to support the termination of an appellant's parental rights. *See In re O.N.H.*, 401 S.W.3d 681, 683 (Tex. App.—San Antonio 2013, no pet.).

In arguing that the evidence is sufficient to support the best-interest finding, the State points out that although a year had passed since S.M.E. had been removed from Shawni E.'s care, Shawni E.'s "situation had not much improved." The State emphasizes that S.M.E. is only a one-year-old child and has spent most of her life in the care of her current caregivers who would like to adopt her. Further, the State argues that at trial, S.M.E. did not show she was capable of parenting such a young child. Markham, the caseworker, testified that Shawni E. had not provided proof of stable employment or a stable home. According to Markham, Shawni E. did not complete her parenting classes and did not demonstrate that she possessed adequate parenting skills. Markham testified that Shawni E. did not demonstrate that she had an adequate social support system. Due to her parents' history with CPS, they were unable to provide such a support system. Nor could Shawni

E.'s parents provide a stable home for Shawni E. and S.M.E. Further, Shawni E. admitted during trial that when she should have been focused on reconciling with S.M.E., her focus had been elsewhere. Thus, at trial, Shawni E. requested more time to complete her service plan. The trial court, however, had already granted Shawni E. an earlier continuance to allow her to complete her service plan. And, instead of using this time to demonstrate her parenting abilities, the record shows that Shawni E. visited her child less frequently. Based on this record, under our standard of review, we must conclude that a reasonable factfinder could form a firm belief or conviction that termination of Shawni E.'s parental rights was in S.M.E.'s best interest. *See In re K.M.L.*, 2014 WL 4252270, at *12. Further, in light of the entire record, the evidence favoring a decision contrary to that reached by the factfinder is not so significant that no reasonable factfinder could have formed a firm belief or conviction that termination is in S.M.E.'s best interest. *See id.* We therefore conclude the evidence is legally and factually sufficient to support the trial court's best-interest finding.

We affirm the trial court's order terminating Shawni E.'s parental rights.

Karen Angelini, Justice