# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-14-00796-CV

**K. H., Appellant**

**v.**

**Texas Department of Family and Protective Services, Appellee**

### FROM THE COUNTY COURT AT LAW OF BASTROP COUNTY
### NO. 14-16427, HONORABLE BENTON ESKEW, JUDGE PRESIDING

## M E M O R A N D U M  O P I N I O N

Appellant K.H. appeals from the trial court's judgment terminating her parental rights to three sons.[1] She contends that the conclusion that termination is in the best interest of the children is not supported by legally and factually sufficient evidence. We will affirm the judgment.

## BACKGROUND

The children at issue in this case were, at the time of trial, twelve years old, nine years old, and twenty-one months old.[2] The boys began living with their maternal grandfather and his wife[3] in May 2013 when their mother, appellant, tested positive for methamphetamine a few weeks

---

[1] The three fathers of these children do not challenge the terminations of their parental rights.

[2] Appellant also has a daughter who lives with an aunt and is not part of this suit.

[3] For ease, we will refer to the maternal grandfather and his wife together as the children's grandparents.

after the birth of the youngest child. Appellant's hair strand in January 2014 tested positive for methamphetamine use thirty to sixty and sixty to ninety days before the test. The Department of Family and Protective Services filed this action in March 2014.

Evidence at the December 2014 trial to the court showed that appellant had completed an outpatient drug use program, psychosocial and psychiatric testing, two parenting classes, and a domestic violence class, and that she was involved in aftercare and counseling programs. She had gotten a job and had housing. The trial court nevertheless terminated her parental rights and those of each boy's father. In addition to finding that termination was in the boys' best interest under Texas Family Code section 161.001(2), the trial court found support for four grounds for termination of appellant's rights. *See id.* § 161.001(1)(D) (endangering conditions), (E) (endangering conduct), (F) (failure to support), & (O) (failure to comply with court-ordered program).

## STANDARD OF REVIEW

Termination proceedings are strictly scrutinized on appeal. *See Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). The natural right of a parent to the care, custody, and control of their children is one of constitutional magnitude. *In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014); *see also Troxel v. Granville*, 530 U.S. 57, 65 (2000). There is a strong presumption that a child's best interest is served by keeping custody in the natural parent. *In re D.T.*, 34 S.W.3d 625, 641 (Tex. App.—Fort Worth 2000, pet. denied). Several factors may be considered, including the following: (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to

promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). This list is not exhaustive, and a factfinder is not required to consider each listed factor. *See id.*; *see also Leal v. Texas Dep't of Protective & Regulatory Servs.*, 25 S.W.3d 315, 322 (Tex. App.—Austin 2000, no pet.).

Appellant challenges both the legal and factual sufficiency of the evidence to support the best-interest finding. We review the legal sufficiency of the evidence by considering all of the evidence in the light most favorable to the factfinder's determination, and will uphold a finding if a reasonable factfinder could have formed a firm conviction that its finding was true. *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). We must assume that the factfinder resolved disputed facts in favor of its finding if it could reasonably have done so. *See id.* When reviewing the factual sufficiency of the evidence, we consider the entire record including evidence contrary to the factfinder's determination. "If, in light of the entire record, we determine that the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction then the evidence is factually insufficient." *Id.* at 266.

## DISCUSSION

Appellant contends that the State did not produce sufficient evidence to overcome the strong presumption that the children's best interest is served by preserving her parental relationship with her children. The State asserts that appellant had endangered the children and, despite engaging in required services, had failed to demonstrate sufficient comprehension of the knowledge and skills imparted in the services. The State contends that the children are safe and happy in their placement with their grandparents who plan to adopt the children following termination of appellant's parental rights.

The boys' court-appointed special advocate testified that the oldest boy preferred to stay with his grandparents, in part because he did not like where his mother lived or the school he would attend while living there. The CASA volunteer testified that the middle brother said he wanted to live with appellant The Department's conservatorship worker testified that the youngest child had lived his whole life with his grandparents and had bonded with them much more than with appellant. The worker testified that during visits the youngest child appeared more closely bonded with appellant's sister than with appellant.

There was no testimony regarding any special needs for any of the children. The older boys were described as good and smart kids who were doing well in school. Their maternal grandfather testified that the oldest boy did not need help with his homework. He said that the middle child had moved into his home nineteen months earlier unable to read or "do sounds." With the grandparents' help, the boy had gone from being unable to do homework to making A-B honor roll.

4

Although there was no evidence of imminent danger to the children, witnesses expressed concern that appellant might relapse into drug use or domestic violence and thereby bring harm to the children. Appellant tested positive for methamphetamine in the weeks and months after the youngest child was born. Although she described methamphetamine as her drug of choice, she later during this case also tested positive for cocaine. She claimed she did not use cocaine but had inadvertently absorbed some while in the company of persons who were smoking cocaine. Her conservatorship worker testified that appellant believed that illegal drugs were dangerous to children only if the children obtained the drugs, not if anyone around them used drugs. Appellant claimed to have no desire to use illegal drugs, but her conservatorship worker said that assertion conflicted with standard views of addiction. Appellant denied having been the victim of domestic violence, but her father testified that the father of one of her sons knocked out one of her front teeth and that she has "a chipped tooth in [her] head" because of another. The grandfather asserted that the father of the youngest child had run the oldest child "out of his own home." He also asserted that appellant's mother fought with appellant's sister in front of the children.

There was not much testimony explicitly assessing the potential custodians' parental skills. The older boys had lived most of their lives with appellant and were both described as "good" and not discipline problems in school. Appellant had used illegal drugs for a greater proportion of the middle child's life, however, and he was reportedly ill-prepared to start school. Only through extra effort with his grandfather and his grandfather's wife had he caught up. Appellant's sister, who was living with her at the time of trial, described appellant as "selfish" and needing to grow up. The conservatorship worker testified that appellant had missed many potential visits and telephone call

5

opportunities with her children. Records indicated that she had visited the children five times during the nine months after the Department intervened with her children, though appellant insisted she had seen them more often. She estimated that she had called the children ten times in the preceding three months. Appellant testified that her contact with the children was limited because she had no car to travel from Austin to Bastrop and her telephone had been cut off.

There was no testimony that the grandparents, who are retired, needed to avail themselves of any programs. The boys were reportedly happy and thriving with them. Appellant was at the time of trial reliant on government assistance for housing, utilities, and food. She had resumed working as a home healthcare assistant and had earned a $73 paycheck for working six hours weekly for two weeks. She anticipated expanding her client base and thus her paycheck. Appellant had lost a job due to not having a driver's license (which she said was taken due to $104 in unpaid surcharges on traffic tickets) and was planning to move from her new job to another unspecified job, though she said she would not leave her new job without having another in place. She had also received a child-support check for $22 for one of the boys during the week before trial. Appellant had engaged in many of the court-ordered services and seemed to be benefitting from them, though she did not challenge the trial court's finding that she had not completed her required services.

The boys' grandfather testified that he intended to adopt the boys. The older two would continue in the schools in which they were succeeding, making friends, and playing basketball. Appellant agreed that the grandparents had provided a safe and stable home for her boys.

6

Appellant intended to have the boys live with her, though her housemates—her sister, her sister's boyfriend, and their child—would have to find another place to live because of occupancy restrictions. She said that the older boys would attend nearby schools, although according to the conservatorship worker the oldest boy did not like the school he would attend. Appellant indicated that her life was stable and improving. Her past gave others concern, however. Her father testified that, in addition to her admitted illegal drug use and the domestic violence that she denied occurred, her boyfriends had more than once damaged vehicles that he had given her so that she might visit the boys. Her father testified that when they went to pick up the boys at appellant's home that "[t]here was so much urine and feces on the floor, that it's ridiculous."

Although appellant had taken steps toward being an appropriate parent, we conclude that the record contains legally and factually sufficient evidence from which a reasonable trial court could form a firm conviction that termination of her parental rights is in the children's best interest. *See* Tex. Fam. Code § 161.001(2); *J.F.C.*, 96 S.W.3d at 266.

## CONCLUSION

We affirm the trial court's judgment.

_____

Jeff Rose, Chief Justice

Before Chief Justice Rose, Justices Goodwin and Field

Affirmed

Filed: May 1, 2015

7