

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-15-00168-CV
_____

IN THE INTEREST OF C.D.A. AND M.R.A., CHILDREN

On Appeal from the 100th District Court
Donley County, Texas
Trial Court No. 7086, Honorable Stuart Messer, Presiding

July 14, 2015

MEMORANDUM OPINION

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

Carla A. appeals from a final order terminating her parental rights to her two teenage sons, C.D.A. and M.R.A.[1]  She contends that the evidence is legally and factually insufficient to support not only the statutory grounds for termination found by the trial court but also the trial court's finding that termination was in the best interest of the children.  We affirm.

*Applicable Law*

The standard of review is that discussed in *In re K.M.L.*, 443 S.W.3d 101 (Tex. 2013). The evidence must be of such quantum that a fact finder could reasonably form

_____

[1] The father of one of the children adopted the other boy.  The father is now deceased.  The boys were sixteen and thirteen at the time of the final hearing.

a firm belief or conviction about the truth of the matter on which the State bears the burden of proof. *Id.* at 112. Furthermore, only one statutory ground is needed to support termination, though the trial court must also find that termination is in the child's best interest. *In re K.C.B.*, 280 S.W.3d 888, 894-95 (Tex. App.—Amarillo 2009, pet. denied). Termination by the trial court at bar was founded upon § 161.001(1)(E), (N), and (O) of the Family Code. The court also determined that termination was in the best interest of the two children or teenagers involved.

*Statutory Ground*

Per § 161.001(1)(E), termination can occur when a parent engages in conduct or knowingly places the children with persons who engaged in conduct that endangered the physical or emotional well-being of the child. TEX. FAM. CODE ANN. § 161.001(1) (E) (West 2014). Under that ground, the focus rests upon the conduct of the parent, that is, the parent's actions or omissions to act. *In re S.M.L.D.*, 150 S.W.3d 754, 757 (Tex. App.—Amarillo 2004, no pet.). Furthermore, endangering the child's well-being may be inferred from parental misconduct. *Id.* Such misconduct need not be directed towards the child in question and may encompass parental use of drugs. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009). Subjecting the children to a transient, unstable lifestyle is also evidence of endangerment. *See Jordan v. Dossey*, 325 S.W.3d 700, 725 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) (stating that a transient lifestyle endangers a child by giving it a life of instability and uncertainty); *accord In re A.B.,* 412 S.W.3d 588, 599-600 (Tex. App.—Fort Worth 2013), *aff'd*, 437 S.W.3d 498 (Tex. 2014) (stating that a parent's conduct that subjects a child to a life of uncertainty and instability endangers the child's physical and emotional well-being). Here, we have that and more.

The record contains the following evidence: 1) the children were removed from Carla's care on March 14, 2014 after she was taken to the hospital for allegedly ingesting ammonia; 2) Carla allegedly ingested the substance after having a fight with her boyfriend; 3) Carla and the children had been living for several weeks with a family, members of which included one or more convicted felons; 4) Carla moved in with that family after being forced to leave another locale; 5) upon Carla's release from the hospital, she was arrested for theft by check; 6) the Department of Family and Protective Services (the Department) had attempted to investigate a prior circumstance regarding her parental abilities but could not complete the investigation after Carla left town; 7) after the teenagers were removed, Carla underwent a drug test that tested positive for methamphetamine, marijuana, and cocaine; 8) Carla failed to undergo all the drug testing required by court order; 9) Carla's boyfriend was arrested for methamphetamine possession after the children were removed; 10) the children reported witnessing their mother and her boyfriend engage in domestic violence; 11) both children had been victims of domestic violence at the hands of Carla (one suffered a broken arm while the other suffered a broken knuckle); 12) the teenagers witnessed their mother use drugs; 13) Carla asked one of the teenagers to acquire drug paraphernalia for her from one of his friends; 14) Carla, at times, was too high on drugs to take the two teenagers to school; 15) Carla believed her boyfriend installed cameras in her eyes; 16) one of the teenagers periodically drank vodka which he acquired from Carla's supply; 17) Carla had money to provide for the family but would not pay bills or buy food; 18) Carla would use available monies to acquire drugs; 19) the two teenagers missed school months at a time; 20) Carla failed to attend counseling as ordered; 21) Carla did not truthfully participate in a drug assessment as required; 22) one teenager

3

broke his thumb while playing football and was told by Carla that there was no money available for medical treatment; 23) Carla did not always provide her children with food; 24) the family moved rather frequently; 25) the Department had approximately ten different phone numbers for Carla and still had difficulty contacting her; 26) Carla failed to attend the final termination hearing and only attended one other hearing; 27) Carla failed to participate in parenting classes; 28) Carla failed to participate in a psychological evaluation; 29) Carla failed to live in any residence for six months or more; 30) Carla failed to maintain a legal source of income; 31) Carla failed to notify the Department of a change of address or telephone number as ordered; and, 32) after the teenagers were removed from her custody, Carla attended only ten of the forty-seven visitations made available to her. This evidence permitted the fact finder to reasonably form a firm belief or conviction that Carla engaged in conduct or knowingly placed her children with persons who engaged in conduct that endangered the physical or emotional well-being of those children.

*Best Interest of the Children*

In determining the best interest of the children, we consider among other things 1) the desires of the children; 2) the emotional and physical needs of the children now and in the future; 3) the emotional and physical danger to the children now and in the future; 4) the parental abilities of the individuals seeking custody; 5) the programs available to assist those individuals to promote the best interest of the children; 6) the plans for the children by those individuals or by the agency seeking custody; 7) the stability of the home; 8) the acts or omissions of the parent indicating that the existing parent/child relationship is not a proper one; and 9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976); *In re*

4

*P.E.W.*, 105 S.W.3d 771, 779-80 (Tex. App.—Amarillo 2003, no pet.). The list is not exhaustive, and each factor need not support termination. *In re C.J.F.*, 134 S.W.3d 343, 354 (Tex. App.—Amarillo 2003, pet. denied). Furthermore, the same evidence illustrating a statutory ground may be probative of the children's best interest. *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002).

In addition to the evidence itemized above, the record also illustrated that: 1) the teenagers were doing well in their foster home; 2) the foster home was appropriate for the children; 3) the foster parents provided the teenagers adequate food, clothing, and transportation; 4) the two children were performing well in school; 5) one of the teenagers was in advanced placement at school; 6) both children wanted to attend college; 7) both children participate in athletics and the band; 8) the children reside together in the foster home; 9) the teenagers are the only children in that home; 10) the foster parents want to adopt them; and 11) the children not only want that their mother's rights be terminated but also that they be adopted by their foster parents. This evidence would permit a fact finder to form a firm belief or conviction that termination was in their best interest.

Having found ample evidence supporting the trial court's decision, we overrule Carla's issues and affirm the final order terminating Carla A.'s parental rights to C.D.A. and M.R.A..

Per Curiam