**Opinion filed June 24, 2021**



In The

# Eleventh Court of Appeals

_____

## No. 11-20-00294-CV

_____

## IN THE INTEREST OF A.L.R., A CHILD

**On Appeal from the 326th District Court**
**Taylor County, Texas**
**Trial Court Cause No. 8863-CX**

## M E M O R A N D U M   O P I N I O N

This is an appeal from an order in which the trial court terminated the parental rights of A.L.R.'s parents.[1]  The father filed this appeal.  On appeal, he presents three issues in which he challenges the findings of the trial court.  We affirm.

### I.  *Issues Presented*

In his first issue, Appellant asserts that the terms of his family service plan were not sufficiently specific to support termination.  In his second issue, Appellant challenges the sufficiency of the evidence with respect to the trial court's finding

---

[1]We note that the mother voluntarily relinquished her parental rights.

that he would remain incarcerated for at least two years following the date that the applicable pleading was filed by the Department. In the third issue, Appellant asserts that termination of his parental rights is not in A.L.R.'s best interest.

## II. *Termination Findings and Standards*

The termination of parental rights must be supported by clear and convincing evidence. TEX. FAM. CODE ANN. § 161.001(b) (West Supp. 2020). To terminate parental rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(b)(1)(A)–(U) and that termination is in the best interest of the child. *Id.*

In this case, the trial court found that Appellant had committed two of the acts listed in Section 161.001(b)(1)—those found in subsections (O) and (Q). Specifically, the trial court found by clear and convincing evidence that Appellant had (1) failed to comply with the provisions of a court order that specifically established the actions necessary for Appellant to obtain the return of the child, who had been in the managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal for abuse or neglect, and (2) knowingly engaged in criminal conduct that resulted in Appellant's conviction of an offense and confinement or imprisonment and inability to care for the child for not less than two years from the date the Department filed its petition. The trial court also found that termination of Appellant's parental rights would be in the best interest of the child. *See* FAM. § 161.001(b)(2).

Because Appellant's issues raise a challenge to the sufficiency of the evidence to support the trial court's findings on termination, we will apply the well-recognized standards of review previously set out by the Texas Supreme Court. *See, e.g.*, *In re A.B.*, 437 S.W.3d 498, 502–03 (Tex. 2014); *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005); *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002). To determine if the evidence is legally sufficient in a parental termination case, we review all of the evidence in

the light most favorable to the trial court's finding and determine whether a rational trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.P.B.*, 180 S.W.3d at 573. To determine if the evidence is factually sufficient, we give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re C.H.*, 89 S.W.3d at 25–26. "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *A.B.*, 437 S.W.3d at 503 (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)).

With respect to the best interest of a child, no unique set of factors need be proved. *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied). But courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to, (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent–child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Id.* Additionally, evidence that proves one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *C.J.O.*, 325 S.W.3d at 266.

### III. *Factual and Procedural Background*

The record shows that the Department became involved with the family in this case shortly after A.L.R. was born. Approximately nineteen months later, after the parties reached an agreement, the trial court entered a final order in which the Department was appointed as the permanent managing conservator of the child. The parents were appointed as possessory conservators with limited rights.

However, within nine months, the Department filed a petition to modify the trial court's prior order—based in part upon the changed circumstances of the parents. The mother had voluntarily relinquished her parental rights, and Appellant had been convicted of the offense of assault family violence, was sentenced to a five-year term of imprisonment, and was incarcerated.

The trial court subsequently held a final hearing on the petition to modify. Three witnesses testified at that hearing: the permanency supervisor over the case, Appellant, and A.L.R.'s foster father. According to the permanency supervisor, the Department requested that the parental rights of both parents be terminated. She explained the change in the parents' circumstances and testified that both parents suffered with mental health issues. The family service plan, which was admitted into evidence as an exhibit, indicated that both parents had mental illnesses; that they were unable to care for A.L.R., who was a newborn at the time of the initial intake; that they were homeless during some months that the mother was pregnant with A.L.R.; that, when they were not homeless, they lived in deplorable conditions in a motel room; and that ongoing domestic violence was a concern.

The family service plan was signed by Appellant and became an order of the court. The permanency supervisor testified that Appellant did not comply with his service plan. She specifically testified that Appellant, in violation of the service plan adopted by the trial court, failed to maintain a legal source of income, failed to maintain stable housing, failed to complete parenting classes, and failed to refrain

4

from criminal activity.  In regard to the above failures, we note that the offense of assault family violence for which Appellant was convicted was a felony and that Appellant was discharged from parenting classes because he "became aggressive with the provider."  Furthermore, at the time of the final hearing, the Department continued to be concerned about Appellant's serious mental illness, his aggression, and his inability to provide a safe and stable environment for A.L.R.

At the time of the final hearing, A.L.R. had been in a kinship placement with the same foster parents for two and one-half years.  She had bonded with the foster parents and their family members.  The foster parents provided a safe, stable home for A.L.R., were protective of her, and met all of her needs.  The Department's plan for A.L.R. was for her to remain with and be adopted by her foster parents, who had become licensed to adopt.  The foster father testified about his family and the manner in which he and his wife were raising their children and A.L.R.  He indicated that A.L.R. had "bonded very strongly" with her foster family.  As such, the Department and the permanency supervisor believed that it would be in A.L.R.'s best interest to terminate Appellant's parental rights.

IV. *Analysis*

*A. Compliance with Service Plan*

In his first issue, Appellant challenges the sufficiency of the evidence to support the trial court's finding under subsection (O).  *See* FAM. § 161.001(b)(1)(O).  Appellant does not assert that he performed the services set forth in the service plan or that the Department's proof regarding Appellant's performance of the services was deficient.  Rather, Appellant contends that the service plan lacked the necessary specificity under subsection (O) because each of the tasks set forth in the service plan began with "The Department requests" instead of language equating to certainty, such as "[Appellant] will or must" perform certain tasks.

5

Appellant's service plan included the following provisions:

[Appellant] will demonstrate the willingness and ability to protect the child from harm.

[Appellant] will understand the serious nature of the situation that placed the child in harms way.

[Appellant] will alter behaviors that expose the child[] to risk of harm.

[Appellant] will recognize and accept the age-appropriate behaviors of the child and learn to cope with them.

[Appellant] will demonstrate an acceptance of the responsibility of being a parent.

[Appellant] will demonstrate an ability to provide basic necessities such as food, clothing, shelter, medical care, and supervision for the child.

[Appellant] will gain an understanding of how the family history of maltreatment has influenced their current situation.

[Appellant] will comply with court orders.

The service plan then set out numerous tasks and services for Appellant, including that he (1) refrain from criminal activity, (2) participate in parenting classes, (3) submit to a psychological evaluation, (4) attend visitation with the child, (5) refrain from the use of illegal drugs, and (6) obtain and maintain stable housing and a legal source of income. Each of these tasks and services began with the words: "The Department requests that [Appellant] . . . ." Appellant and his attorney signed and approved the service plan.

The trial court approved the service plan and made it an order of the court. In its order, the trial court advised the parents that "progress under the service plan will be reviewed at all subsequent hearings, including a review of whether the parties have acquired or learned any specific skills or knowledge stated in the service plan." Furthermore, the trial court indicated that Appellant had reviewed the service plan,

that he understood it, and that he had been advised that his parental rights could be terminated if he was not willing or able to provide A.L.R. with a safe environment, even with the assistance of the service plan, in a reasonable period of time as specified in the plan.

Although some of the language used in the service plan could have been more authoritative and phrased as a command rather than a request, it was clear from the combined terms of the court order and the service plan that Appellant was required to complete the tasks and services set forth in the service plan. Moreover, nothing in the record before us indicates that Appellant believed the tasks and services were merely requests with which he did not have to comply, and the undisputed evidence presented at the final hearing on termination showed that Appellant did not comply with the requirements set forth above.

In addition to proving that Appellant failed to comply with the provisions of a court order that specifically established the actions necessary for him to obtain the return of the child, the Department must also have shown that the child had been in the managing conservatorship of the Department for not less than nine months as a result of the child's removal for abuse or neglect. Here, at the time of the final hearing, the child had been in the Department's care for well over nine months, and she had been removed from Appellant's care due to abuse or neglect. The Texas Supreme Court has held that the language "abuse or neglect of the child" as used in subsection (O) "necessarily includes the risks or threats of the environment in which the child is placed." *In re E.C.R.*, 402 S.W.3d 239, 248 (Tex. 2013). In *E.C.R.*, the court determined that "placing the child's physical health or safety at substantial risk" is sufficient to support a finding of "abuse or neglect." *Id.* at 240. The evidence presented at trial—including evidence of the parents' mental illnesses, their inability to provide A.L.R. with a safe environment, and the repeated occurrences of domestic violence in their household—constituted sufficient evidence from which the trial

7

court could have determined by clear and convincing evidence that the child had been removed because of a substantial risk of abuse or neglect.

Furthermore, Appellant did not prove by a preponderance of the evidence that he was unable to comply with the provisions of his service plan and that he had made a good faith effort to comply but had been unable to comply due to no fault of his own. *See* FAM. § 161.001(d) (providing that termination is not permitted pursuant to subsection (O) if the parent proves by a preponderance of the evidence that (1) the parent was unable to comply and (2) the parent made a good faith effort to comply and the failure to comply is not attributable to any fault of the parent); *see also In re Z.M.M.*, 577 S.W.3d 541, 542–43 (Tex. 2019) (requiring appellate courts to review a trial court's decision under Section 161.001(d) when addressing the sufficiency of the evidence to support a finding under Section 161.001(b)(1)(O)). Nor does Appellant argue on appeal that he was unable to comply with the provisions of his service plan.

In light of our review of the record, we hold that the evidence is legally and factually sufficient to support the trial court's finding under Section 161.001(b)(1)(O). *See In re L.G.*, 596 S.W.3d 778, 780 (Tex. 2020) (upholding finding under subsection (O)). The trial court's finding is supported by clear and convincing evidence, and the trial court could reasonably have formed a firm belief or conviction as to the truth of its finding. Accordingly, we overrule Appellant's first issue.

Because only one statutory ground is necessary to support termination and because we have upheld the trial court's finding as to subsection (O), we need not address Appellant's second issue in which he challenges the finding made by the trial court pursuant to subsection (Q). *See* FAM. § 161.001(b)(1); *see also* TEX. R. APP. P. 47.1.

*B. Best Interest*

In his third issue on appeal, Appellant challenges the sufficiency of the evidence to support the trial court's finding that termination of his parental rights was in the best interest of A.L.R. Appellant asserts that the Department (1) failed to present evidence relating to several of the *Holley* factors and (2) failed to present specific evidence to show that termination of Appellant's parental rights would be in A.L.R.'s best interest. In light of the evidence detailed above, we disagree with Appellant's contention.

We note that the trier of fact is the sole judge of the credibility of the witnesses at trial and that we are not at liberty to disturb the determinations of the trier of fact provided those determinations are not unreasonable. *J.P.B.*, 180 S.W.3d at 573. Here, we hold that, applying the *Holley* factors and considering other relevant evidence as well, the trial court could reasonably have formed a firm belief or conviction that termination of Appellant's parental rights would be in the best interest of A.L.R. *See Holley*, 544 S.W.2d at 371–72. Upon considering the record as it relates to the desires of the child (who was too young to express any desire but who had spent most of her life in the same home—that of the kinship placement), the emotional and physical needs of the child now and in the future, the emotional and physical danger to the child now and in the future, the parental abilities of Appellant, the parental abilities of the foster parents in the kinship placement, the Department's plans for the child, Appellant's inability to provide a safe home for the child, the stability of the kinship placement's home, Appellant's mental health issues, and Appellant's history of family violence and other criminal history, we further hold that the evidence is legally and factually sufficient to support the trial court's finding that termination of Appellant's parental rights is in the best interest of A.L.R. *See id.* Accordingly, we overrule Appellant's third issue.

## V.  *This Court's Ruling*

We affirm the trial court's order of termination.

W. STACY TROTTER

JUSTICE

June 24, 2021

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.