# IN THE SUPREME COURT OF TEXAS

═══════════

No. 13-0749

═══════════

IN THE INTEREST OF A.B. AND H.B., CHILDREN,

═══════════════════════════════════

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE SECOND DISTRICT OF TEXAS

═══════════════════════════════════

**Argued April 22, 2014**

JUSTICE GUZMAN delivered the opinion of the Court.

In parental termination cases, our courts of appeals are required to engage in an exacting review of the entire record to determine if the evidence is factually sufficient to support the termination of parental rights. And to ensure the jury's findings receive due deference, if the court of appeals reverses the factfinder's decision, it must detail the relevant evidence in its opinion and clearly state why the evidence is insufficient to support the termination finding by clear and convincing evidence. Today, we are asked to extend this requirement well beyond its previous parameters—requiring courts to detail the evidence even when affirming the jury's decision. Because the current standard appellate courts must adhere to in conducting a factual sufficiency review in a termination case protects the fundamental interests at stake, we decline the invitation to unnecessarily expand it.

This protracted parental termination case dates back to 2008. There have been two trials resulting in termination of parental rights, two court of appeals opinions reversing and remanding for new trial on factual sufficiency grounds, and finally, an en banc court of appeals decision affirming termination. But despite the protracted history of this case, this appeal only requires us to decide whether the court of appeals, in affirming the termination, adhered to the proper standard for conducting a factual sufficiency review. Because the court of appeals' opinion and the record demonstrate the court of appeals considered the record in its entirety—as a proper factual sufficiency review requires—we affirm.

## I. Background

Mother and Father married in 2005 in Missouri. Their son, A.B., was born later that year, and their daughter, H.B., was born in 2006. By the time Mother and Father separated in July 2007, the family had relocated to Texas. Following the parents' separation, the children remained primarily in Mother's care. There are varying accounts as to how often Father cared for the children following the parents' separation.

The Texas Department of Family and Protective Services ("DFPS") became involved when H.B. was admitted to the intensive care unit at Cook Children's Hospital in September 2007, after Mother reported H.B. had been having seizures. Her seizures were attributed to hyponatremia—inadequate sodium levels in the blood—which can be caused by inadequate nutrition. H.B. was fifteen months old, and weighed fifteen pounds upon admission to the hospital. Testimony at trial indicated H.B. had dropped from the fiftieth percentile in weight on February 2007, to the third percentile by April, and fell off the growth chart entirely by May. Her treating

physicians also observed significant developmental delays, noting that H.B. could not crawl, walk, or sit up on her own. She was subsequently diagnosed with failure to thrive, which DFPS concluded was a result of physical neglect.

Rather than return the children to Mother and Father after H.B. was discharged from the hospital, DFPS placed both children with maternal relatives so Mother and Father could complete services with DFPS. Father completed his services, and the children were returned to his care in June 2008. Roughly one month later, in July 2008, a caseworker visited the children at Father's home and discovered A.B. with injuries to his face and bruising on his left ear extending to his cheek. The children were removed from Father's care, placed with a foster family, and DFPS filed suit to terminate both parents' rights the following day.

After a bench trial in 2009, the trial court found, by clear and convincing evidence, grounds for termination under subsections (D) and (E) of 161.001(1) of the Texas Family Code. Specifically, the court held Father had knowingly placed or allowed the children to remain in conditions and surroundings that endangered their physical and emotional well-being, and that Father engaged in conduct and knowingly placed the children with persons who engaged in conduct that endangered the physical and emotional well-being of the children.[1] The court also concluded termination of Father's parental rights was in the children's best interest.

Father appealed the trial court's 2009 decision, challenging, among other things, the legal and factual sufficiency of the evidence to support the court's endangerment findings. 412 S.W.3d 588, 613 (Walker, J., dissenting). The court of appeals held the evidence was legally sufficient but

_____

[1] Mother voluntarily relinquished her rights in June 2009 and is not a party to this appeal.

factually insufficient to support the finding of endangerment. *Id.* at 651–52, 656. The court reversed and remanded the case for a new trial. *Id.* at 660.

In February 2011, the case was retried before a jury. The jury made the same findings as the trial court had in 2009, including the endangerment findings under section 161.001(1)(D) and (E) and that termination was in the children's best interest. The trial court entered a decree of termination pursuant to the jury's findings in June 2011.

Father appealed the termination order, once again arguing the State failed to present legally and factually sufficient evidence to support the jury verdict. *Id.* at 674. The court of appeals, finding that DFPS did not present enough new evidence to change its holding from the prior case, once again held there was factually insufficient evidence of endangerment. *Id.* at 660.

Both DFPS and Intervenors[2] filed motions for en banc reconsideration in the court of appeals. *Id.* at 591. The court of appeals granted the motion and, in a per curiam opinion, found the evidence of endangerment was factually sufficient to support termination under section 161.001(1)(E) and affirmed the termination of Father's parental rights. *Id.* at 601. Two justices dissented, arguing the court misapplied the standard in conducting its factual sufficiency review and that, under the correct standard in which the entire record is accounted for, the evidence remained factually insufficient to terminate Father's rights under subsection (E). *Id.* at 613 (Walker, J., dissenting).

---

[2] In December 2010, A.B. and H.B.'s foster parents filed a motion to intervene in the second suit pursuant to sections 102.003(12) and 102.005(3) of the Family Code.

4

Here, Father echos the concerns raised by the dissent, namely that the court failed to conduct a proper factual sufficiency review because, though its opinion analyzed the evidence favorable to DFPS, it failed to review evidence favorable to Father. As such, Father argues the court improperly disregarded relevant, probative evidence in performing its factual sufficiency review, and erred when it "failed to detail the conflicting evidence." We granted Father's petition for review.

## II. Discussion

The authority to conduct a factual sufficiency review lies exclusively with the courts of appeals. TEX. CONST. art. V, § 6. Because proper application of the standard involves a legal question, this Court may review a court of appeals' factual sufficiency analysis to ensure the court of appeals adhered to the correct legal standard. *See Jaffe Aircraft Corp. v. Carr*, 867 S.W.2d 27, 29 (Tex. 1993). Nevertheless, this Court must refrain from transforming such authority into a guise for conducting its own independent review of the facts. *See* TEX. GOV'T CODE § 22.225(a) ("A judgment of a court of appeals is conclusive on the facts of the case in all civil cases.").

A factual sufficiency review pits two fundamental tenets of the Texas court system against one another: the right to trial by jury[3] and the court of appeals' exclusive jurisdiction over questions of fact.[4] And, in the context of parental termination cases, a third interest must also be accounted for—that is, parents' fundamental right to make decisions concerning "the care, the custody, and control of their children." *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *see Holick v. Smith*, 685

---

[3] *See* TEX. CONST. art. I, § 15 ("The right of trial by jury shall remain inviolate."); TEX. CONST. art. V, § 10 ("In the trial of all causes in the District Courts, the plaintiff or defendant shall, upon application made in open court, have the right of trial by jury.").

[4] *See* TEX. CONST. art. V, § 6 ("[T]he decision of [courts of appeals] shall be conclusive on all questions of fact brought before them on appeal or error.").

5

S.W.2d 18, 20 (Tex. 1985) ("The natural right existing between parents and their children is of constitutional dimensions."). Thus, in *In re C.H.*, we articulated a factual sufficiency standard to strike an appropriate balance between these competing principles. 89 S.W.3d 17, 25 (Tex. 2002).

Because the termination of parental rights implicates fundamental interests, a higher standard of proof—clear and convincing evidence—is required at trial. *See In re G.M.*, 596 S.W.2d 846, 847 (Tex. 1980). Given this higher burden at trial, in *C.H.* we concluded a heightened standard of appellate review in parental termination cases is similarly warranted. 89 S.W.3d at 25–26. Specifically, a proper factual sufficiency review requires the court of appeals to determine whether "the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations." *Id.* at 25. "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). And in making this determination, the reviewing court must undertake "an exacting review of the entire record with a healthy regard for the constitutional interests at stake." *See C.H.*, 89 S.W.3d at 26.

But, as we also recognized in *C.H.*, while parental rights are of a constitutional magnitude, they are not absolute. *Id.* Consequently, despite the heightened standard of review as articulated in *C.H.*, the court of appeals must nevertheless still provide due deference to the decisions of the factfinder, who, having full opportunity to observe witness testimony first-hand, is the sole arbiter when assessing the credibility and demeanor of witnesses. *In re J.L.*, 163 S.W.3d 79, 86–87 (Tex. 2005). For this reason, we concluded that if a court of appeals is *reversing* the jury's finding based

6

on insufficient evidence, the reviewing court must "detail the evidence relevant to the issue of parental termination and clearly state why the evidence is insufficient to support a termination finding by clear and convincing evidence." *C.H.*, 89 S.W.3d at 19. This requirement ensures the reviewing court appropriately respects the jury's fact-finding function. *Id.* at 26–27.

Though we have repeatedly articulated the above standard—requiring courts of appeals to detail the evidence—in cases *reversing* a jury verdict based on insufficient evidence,[5] we have never similarly required appellate courts to detail the evidence in this manner when the court *affirms* the judgment of termination. In fact, we have expressly held to the contrary for preponderance cases—that is, "a court of appeals must detail the evidence . . . and clearly state why the jury's finding is factually insufficient when *reversing* a jury verdict, *but need not do so when affirming a jury verdict*." *Gonzales v. McAllen Med. Ctr., Inc.*, 195 S.W.3d 680, 681 (Tex. 2006) (emphases added) (quotation marks omitted). In *Ellis County State Bank v. Keever*, we recognized that the effort of detailing the evidence is required of the courts of appeals when reversing a jury verdict to discourage the reviewing court from "merely substituting its judgment for that of the jury." 888 S.W.2d 790, 794 (Tex. 1994). Indeed, our courts of appeals walk a very fine line in conducting an appropriate factual sufficiency review. *See Mohnke v. Greenwood*, 915 S.W.2d 585, 590 (Tex. App.—Houston [14th Dist.] 1996, no writ) ("[T]he appellate court should not act as a thirteenth juror in assessing the evidence and the credibility of the witnesses."). But when the reviewing court *affirms* the jury verdict, the risk that the court has usurped the role of the jury disappears. And in

---

[5] *See In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009); *In re H.R.M.*, 209 S.W.3d 105, 108–09 (Tex. 2006); *J.F.C.*, 96 S.W.3d at 266.

7

*Keever*, we perceived "no other justification for imposing this additional burden on the courts of appeals," and thus declined to require courts of appeals to detail the evidence when affirming the trial court's judgment. 888 S.W.2d at 794.

Since our decision in *Keever*, we have established one exception to the general rule that appellate courts need not "detail the evidence" when affirming a jury finding: exemplary damages. In *Transportation Insurance Co. v. Moriel*, we reasoned:

> We have already held in *Pool* that courts of appeals, when reversing on insufficiency grounds, should detail the evidence in their opinions and explain why the jury's finding is factually insufficient or is so against the great weight and preponderance of the evidence as to be manifestly unjust. Due to the jury's broad discretion in imposing [exemplary] damages, we believe that a similar type of review is appropriate when a court of appeals is *affirming* such an award over a challenge that it is based on insufficient evidence or is against the great weight and preponderance of the evidence.

879 S.W.2d 10, 31 (Tex. 1994) (citation omitted). Thus, we concluded that "the court of appeals, when conducting a factual sufficiency review of [an exemplary] damages award, must hereafter detail the relevant evidence in its opinion, explaining why that evidence either supports or does not support the [exemplary] damages award in light of the *Kraus* factors." *Id.* The Legislature subsequently codified this requirement.[6]

In both exemplary damages and parental termination cases, the standard of proof at trial is heightened—the plaintiff (or in the case of parental termination, the State) must prove the claim by clear and convincing evidence. *See* TEX. CIV. PRAC. & REM. CODE § 41.003(a) (allowing recovery

---

[6] *See* Act of Apr. 11, 1995, 74th Leg., R.S., ch. 19, § 1, sec. 41.013(a) (current version at TEX. CIV. PRAC. & REM. CODE § 41.013(a)) ("[A]n appellate court that reviews the evidence with respect to a finding by a trier of fact concerning liability for exemplary damages or with respect to the amount of exemplary damages awarded shall state, in a written opinion, the court's reasons for upholding or disturbing the finding or award.").

of exemplary damages only if the claimant proves by clear and convincing evidence that the claimant's harm resulted from fraud, malice, or gross negligence); *G.M.*, 596 S.W.2d at 847 (extending the clear and convincing standard to termination proceedings). But the similarities essentially end there. The purpose of an award of exemplary damages is to punish and deter, "similar to that for criminal punishment." *Moriel*, 879 S.W.2d at 16. But exemplary damage awards have been plagued by concerns that, due to the broad discretion afforded juries in deciding these damages, such awards are unpredictable with little basis in fact, amounting to "unjust punishment." *See id*. at 17, 29. As the United States Supreme Court has explained, "[a] jury's assessment of the extent of a plaintiff's injury is essentially a factual determination, whereas its imposition of [exemplary] damages is an expression of its moral condemnation." *Cooper Indus., Inc. v. Leatherman Tool Grp., Inc.*, 532 U.S. 424, 432 (2001). Such discretion has prompted both this Court and the Legislature to enact substantial procedural safeguards to ensure that jury awards for exemplary damages are properly calculated against defendants. And as one of these procedural safeguards, we concluded in *Moriel* that a court of appeals conducting a factual sufficiency review of an exemplary damages award must detail all relevant evidence in its opinion, whether it ultimately affirms or reverses the award. *See* 879 S.W.2d at 31.

The purpose of terminating parental rights, in contrast, is not to punish parents or deter their "bad" conduct, but rather to protect the interests of the child. *In re A.V.*, 113 S.W.3d 355, 361 (Tex. 2003). Unlike exemplary damages awards, which leave much to the jury's discretion, the Family Code provides a detailed statutory framework to guide the jury in making its termination findings. Specifically, in proceedings to terminate the parent-child relationship under section 161.001 of the

9

Family Code, the petitioner is required to establish one or more of the acts or omissions enumerated under subdivision (1) of the statute, and must also prove that termination is in the best interest of the child. TEX. FAM. CODE § 161.001(1), (2). Proof under each subsection must be satisfied by clear and convincing evidence; termination may not be based solely on the best interest of the child as determined by the trier of fact. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987). Thus, termination proceedings require juries to make specific findings of fact, and the Family Code provides the contours to limit unnecessary discretion. In termination cases, jurors are not provided with the same "unbridled discretion" that courts have found disconcerting in reviewing exemplary damages.

Moreover, review of exemplary damages and parental terminations are different processes for an additional reason: competing fundamental interests. An award of exemplary damages only implicates one fundamental concern, the defendant's due process rights to her property. Because no competing fundamental interest exists to balance this right in the trial court, we require courts of appeals to detail the evidence of their exacting review on appeal. *Moriel*, 879 S.W.2d at 31. By contrast, in parental termination cases, the parents' fundamental interest in maintaining custody and control of their children is balanced against the State's fundamental interest in protecting the welfare of the child. *See In re M.S.*, 115 S.W.3d 534, 547–48 (Tex. 2003). But for the State's fundamental interest in the welfare of the child, termination would not be proper. The Legislature has safeguarded the parent's fundamental interest by limiting the circumstances in which the State's interest can overcome the parent's interest. *See* TEX. FAM. CODE § 161.001. And we have further safeguarded the parent's interest by requiring courts of appeals to conduct an exacting review of the

entire record when a parent challenges a termination order for insufficient evidence. *See C.H.*, 89 S.W.3d at 19. In short, the State's competing fundamental interest, the Legislature's statutory protection of the parent's fundamental interest by narrowing the grounds for termination, and our protection of the parent's fundamental interest by requiring an exacting review of the entire record together provide ample protection of the parent's fundamental interest.

As such, the rationale which persuaded us to require courts of appeals to detail relevant evidence in affirming exemplary damage awards in *Moriel* does not likewise persuade us to require the same in termination proceedings. This is not to suggest that courts of appeals should not detail the evidence in their opinions affirming a jury's decision to terminate. To the contrary, we encourage courts to do so, and we reaffirm that they must in any event conduct an exacting review of the evidence regardless of how they dispose of the case before them. *Id.* But in light of the difference in purposes and the limits that the statute already places on the jury's decision to terminate, we decline to mandate that courts of appeals detail the evidence when affirming a jury verdict.[7]

Here, the court of appeals cited the correct standard—that is, whether "*on the entire record*, a factfinder could reasonably form a firm conviction or belief that the parent violated subsection (D)

---

[7] Father expresses concern that without requiring the court of appeals to detail the evidence it considered in making its decision to affirm termination, this Court surrenders its ability to determine whether the court of appeals did in fact adhere to the correct standard in conducting its factual sufficiency review. But as a practical matter, this Court has the record available when reviewing the court of appeals' opinion. If the record contains evidence that would tend to cast serious doubt on the outcome, and there is no indication in the court of appeals' opinion that this relevant evidence was considered, this Court may conclude the reviewing court did not adhere to the correct standard and remand accordingly. But when the unmentioned evidence does not rise to this level, or when the Court can readily discern from the opinion before it that the court of appeals did in fact review the record in its entirety, this Court has no reason to question whether the reviewing court adhered to the proper factual sufficiency standard.

or (E) of section 161.001(1)" and "[i]f, *in light of the entire record*, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction in the truth of its finding."[8] 412 S.W.3d at 592 (emphases added) (citing *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) and *C.H.*, 89 S.W.3d at 28). The court of appeals subsequently devoted six pages of its opinion to articulating the evidence presented at trial. *See id.* 593–99.

As the en banc court concluded, there was some evidence tending to support the jury's termination finding under section 161.001(1)(E) that Father engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered the physical or emotional well-being of the child. For example, as to H.B.'s failure to thrive diagnosis, there was medical testimony that H.B. was "severely malnourished" and suffered from "significant developmental delays." *Id.* at 594–95. There was also evidence that H.B.'s condition would take months to develop, and thus her growth problems began well before Father and Mother separated. *Id.* at 594. Regarding A.B.'s injuries in 2008, there was medical testimony opining that such injuries "were not of a kind that a child would sustain accidentally," that the linear bruises on A.B.'s face were likely caused by a slap, and that the injury to A.B.'s ear was more consistent with a pinch or "blow." *Id.* at 597.

The record also contains some evidence favorable to Father's position. For instance, Father testified that he was a small child and simply thought H.B. took after him and that Mother was the one who took the children to the doctor and fed the children. *Id.* at 594. He also denied having ever

---

[8] Additionally, in considering the best interests of the children, the court of appeals concluded "viewing the entire record in a neutral light, we hold that the evidence is factually sufficient for the jury to form a firm conviction or belief that termination was in the children's best interest." 412 S.W.3d at 607.

hit either of his children, maintaining that he pled guilty to injury of a child only because he was told he could be in jail for up to two years awaiting trial. *Id.* at 612 (Walker, J., dissenting). The court of appeals undoubtably considered this evidence, for it was thoroughly articulated in the court of appeals' earlier decisions in the case, which were included as appendices to the dissent. *See id.* at 613, 660. Thus, from the court of appeals' decision, as well as the record before us, it is evident that the en banc court of appeals, though it did not specifically detail all evidence favorable to Father in its majority opinion, did in fact comply with the standard articulated in *C.H.* when it considered the record in its entirety.

### III. Conclusion

For over a decade, we have required courts of appeals conducting factual sufficiency reviews in parental termination cases to engage in a thorough review of the entire record. This exacting review safeguards the constitutional rights of parents, while simultaneously ensuring the emotional and physical interests of the child are appropriately considered. But the court of appeals' authority to conduct a factual sufficiency analysis does not permit the court to stand in the role of a thirteenth juror. Thus, if the reviewing court is to reverse the factfinder, it must detail the evidence supporting its decision. Here, by considering the record in its entirety, the court of appeals executed an appropriate factual sufficiency review. Because the court ultimately affirmed the jury's termination findings, it was not required to detail the evidence. Accordingly, we affirm.

_____
Eva M. Guzman
Justice

**OPINION DELIVERED:** May 16, 2014