

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-22-00052-CV

IN THE INTEREST OF C.C.H., A CHILD

On Appeal from the County Court at Law
Lamar County, Texas
Trial Court No. 90466

Before Morriss, C.J., Stevens and van Cleef, JJ.
Memorandum Opinion by Justice van Cleef

# MEMORANDUM OPINION

The Department of Family and Protective Services filed a petition to terminate Mother's parental rights to her daughter, C.C.H.[1]  After a bench trial, the trial court found the existence of statutory grounds for termination under Section 161.001(b)(1), specifically Grounds D, E, I, N, O, and P, of the Texas Family Code.  The trial court also found that termination of Mother's parental rights was in C.C.H.'s best interests.[2]  *See* TEX. FAM. CODE ANN. § 161.001(b)(2).  As a result, Mother's parental rights were terminated.

On appeal, Mother argues that the trial court's affirmative findings on the statutory grounds were not supported by legally and factually sufficient evidence.[3]  Because we find that sufficient evidence supported the Ground D finding, we affirm the trial court's judgment.

## I.    Standard of Review

"The natural right existing between parents and their children is of constitutional dimensions."  *In re E.J.Z.*, 547 S.W.3d 339, 343 (Tex. App.—Texarkana 2018, no pet.) (quoting *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985)).  "Indeed, parents have a fundamental right to make decisions concerning 'the care, custody, and control of their children.'"  *Id.* (quoting *Troxel v. Granville*, 530 U.S. 57, 65 (2000)).  "Because the termination of parental rights implicates fundamental interests, a higher standard of proof—clear and convincing evidence—is required at trial."  *Id.* (quoting *In re A.B.*, 437 S.W.3d 498, 502 (Tex. 2014)).

---

[1]We use initials to protect the identity of the child and refer to her parents as "Mother" and "Father."  *See* TEX. R. APP. P. 9.8.

[2]Father's parental rights were also terminated, but he is not a party to this appeal.

[3]Mother does not challenge the trial court's best-interests finding.

"'Clear and convincing evidence' is that 'degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established.'" *Id.* (quoting TEX. FAM. CODE ANN. § 101.007) (citing *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009)). Based on this standard, we are required to "engage in an exacting review of the entire record to determine if the evidence is . . . sufficient to support the termination of parental rights." *Id.* (quoting *In re A.B.*, 437 S.W.3d at 500).

"In our legal sufficiency review, we consider all the evidence in the light most favorable to the findings to determine whether the fact-finder reasonably could have formed a firm belief or conviction that the grounds for termination were proven." *In re L.E.S.*, 471 S.W.3d 915, 920 (Tex. App.—Texarkana 2015, no pet.) (citing *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (per curiam); *In re J.L.B.*, 349 S.W.3d 836, 846 (Tex. App.—Texarkana 2011, no pet.)). "We assume the trial court, acting as fact-finder, resolved disputed facts in favor of the finding, if a reasonable fact-finder could do so, and disregarded evidence that the fact-finder could have reasonably disbelieved or the credibility of which reasonably could be doubted." *Id.* (citing *In re J.P.B.*, 180 S.W.3d at 573).

"In our review of factual sufficiency, we give due consideration to evidence the trial court could have reasonably found to be clear and convincing." *Id.* (citing *In re H.R.M.*, 209 S.W.3d 105, 109 (Tex. 2006) (per curiam)). "We consider only that evidence the fact-finder reasonably could have found to be clear and convincing and determine 'whether the evidence is such that a fact[-]finder could reasonably form a firm belief or conviction about the truth of the . . . allegations.'" *Id.* (quoting *In re H.R.M.*, 209 S.W.3d at 109 (quoting *In re C.H.*, 89 S.W.3d

3

17, 25 (Tex. 2002)) (citing *In re J.F.C.*, 96 S.W.3d 256, 264, 266 (Tex. 2002)). "If, in light of the entire record, the disputed evidence that a reasonable fact[-]finder could not have credited in favor of the finding is so significant that a fact[-]finder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.* (quoting *In re J.F.C.*, 96 S.W.3d at 266).

"Despite the profound constitutional interests at stake in a proceeding to terminate parental rights, 'the rights of natural parents are not absolute; protection of the child is paramount.'" *Id.* (quoting *In re A.V.*, 113 S.W.3d 355, 361 (Tex. 2003) (quoting *In re J.W.T.*, 872 S.W.2d 189, 195 (Tex. 1994)) (citing *In re M.S.*, 115 S.W.3d 534, 547 (Tex. 2003))). "A child's emotional and physical interests must not be sacrificed merely to preserve parental rights." *Id.* (quoting *In re C.A.J.*, 459 S.W.3d 175, 179 (Tex. App.—Texarkana 2015, no pet.) (citing *In re C.H.*, 89 S.W.3d at 26)).

## II. The Evidence at Trial

C.C.H. was almost one year old at the time of trial. Brittany Allen, the Department's caseworker, testified that Mother and C.C.H. both tested positive for methamphetamine at C.C.H.'s birth on June 29, 2021. According to Allen, C.C.H. was diagnosed with reactive airway disorder and chronic bronchitis due to Mother's illegal drug use during pregnancy. Mother admitted to a Court Appointed Special Advocate (CASA) worker that she took ecstasy before C.C.H.'s birth, had used the drug since 2018 "for weight loss and to increase her libido," and did not seek prenatal care until the last month of gestation.

Although Mother completed some of her family-based service plan, including counseling, Allen testified that Mother lasted less than twenty-four hours in her court-ordered, inpatient, drug treatment program, tested positive for methamphetamine and amphetamine on July 22, and failed to complete other ordered drug testing. In total, Mother missed eleven drug tests during the case and was presumed to be positive each time.

Allen testified that Mother said she did not want to visit C.C.H. and failed to do so during the pendency of the case. Cathy Stokes, Mother's parenting instructor, testified that Mother started parenting classes "over five times" but had never completed the required twelve classes in a row. Stokes added that Mother "did not have a good attitude" and did not "see any point in . . . coming" to the parenting classes.

While the home where Mother lived was described as "clean and appropriate," Allen said that Mother, who she believed was still on drugs, would be unable to take care of C.C.H.'s medical needs. A CASA report, admitted into evidence without objection, said Mother did not agree that "[C.C.H.] being positive at birth for meth [was] harmful for her."

The Department introduced judgments of conviction showing that, in 2012, Mother was convicted of evading arrest with a motor vehicle with a prior conviction for evading arrest, a third-degree felony, and was placed on community supervision. Her community supervision was revoked after she tested positive for cocaine in 2013 and failed to complete alcohol and drug counseling. Mother was eventually sentenced to four years' imprisonment for the offense and was released in 2017. Mother's other criminal records prior to C.C.H.'s birth showed that she

5

was previously convicted of driving while intoxicated, driving with a suspended license, possession of marihuana, theft by check, theft of services, and evading arrest.

After hearing this evidence, the trial court terminated Mother's parental rights.

## III. Sufficient Evidence Supports the Ground D Predicate Finding

"Only one predicate finding under Section 161.001[b](1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest." *In re O.R.F.*, 417 S.W.3d 24, 37 (Tex. App.—Texarkana 2013, pet. denied) (quoting *In re A.V.*, 113 S.W.3d at 362) (citing *In re K.W.*, 335 S.W.3d 767, 769 (Tex. App.—Texarkana 2011, no pet.))). Yet, because the trial court's finding under Ground D "may have implications for . . . parental rights to other children," due process demands that we review the trial court's findings under this ground. *In re N.G.*, 577 S.W.3d 230, 234 (Tex. 2019) (per curiam).

Termination under Ground D is proper when there is clear and convincing evidence that a parent has "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child." TEX. FAM. CODE ANN. § 161.001(b)(1)(D). Ground D focuses on the child's environment, and the Department had the burden of proving by clear and convincing evidence that that environment endangered the child's physical or emotional well-being. *See In re L.C.*, 145 S.W.3d 790, 796 (Tex. App.—Texarkana 2004, no pet.).

"A child is endangered when the environment creates a potential for danger that the parent is aware of, but disregards." *In re N.B.*, No. 06-12-00007-CV, 2013 WL 1605457, at *9 (Tex. App.—Texarkana May 8, 2012, no pet.) (mem. op.). Ground "(D) permits termination [of

6

parental rights] based on a single act or omission [by the parent]." *In re L.C.*, 145 S.W.3d at 797; *see In re A.B.*, 125 S.W.3d 769, 777 (Tex. App.—Texarkana 2003, pet. denied). "[U]nlawful conduct by a parent . . . can create an environment that endangers the physical and emotional well-being of a child as required for termination under [Ground] (D)." *In re C.J.B.*, No. 05-19-00165-CV, 2019 WL 3940987, at \*6 (Tex. App.—Dallas Aug. 21, 2019, no pet.) (mem. op.). "Endanger," as used in the definition of Ground D, "means to expose to loss or injury; to jeopardize." *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987); *see In re L.E.S.*, 471 S.W.3d at 923.

"In evaluating termination under [G]round (D) . . . we are to examine the time prior to [the child's] removal to determine whether the environment of the home posed a danger to her physical or emotional well-being." *In re L.E.S.*, 471 S.W.3d at 926 (citing *In re L.C.*, 145 S.W.3d at 795); *see In re Y.Z.*, No. 04-20-00429-CV, 2021 WL 469014, at \*3 (Tex. App.—San Antonio Feb. 10, 2021, no pet.) (mem. op.). Facts prior to the removal showed that Mother had a lengthy drug history.

"[I]llegal drug use by a parent . . . supports the conclusion that [a child]'s surroundings endanger [her] physical or emotional well-being." *In re K.B.*, No. 06-20-00074-CV, 2020 WL 7702179, at \*4 (Tex. App.—Texarkana Dec. 29, 2020, no pet.) (mem. op.) (quoting *In re L.E.S.*, 471 S.W.3d at 925) (citing *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.); *In re N.B.*, No. 06-12-00007-CV, 2012 WL 1605457, at \*9 (Tex. App.—Texarkana May 8, 2012, no pet.) (mem. op.) ("unlawful conduct by persons who live in the child's home or with whom the child is compelled to associate on a regular basis in his home is a part of the

7

'conditions or surroundings' of the child's home under [Ground] D"). Mother was found in possession of marihuana in 2010, drove while intoxicated, used cocaine in 2013, and admitted to using ecstasy since 2018.

Crucially, Mother disregarded potential risk to C.C.H. and used ecstasy and methamphetamine during pregnancy. "A mother's drug use during pregnancy 'may amount to conduct that endangers the physical and emotional well-being of the child.'" *In re A.R.*, No. 06-20-00013-CV, 2020 WL 3865372, at \*4 (Tex. App.—Texarkana July 9, 2020, no pet.) (mem. op.) (quoting *In re E.J.P.*, No. 06-04-00131-CV, 2005 WL 2138573, at \*3 (Tex. App.—Texarkana Sept. 7, 2005, no pet.) (mem. op.)). In this case, ample evidence showed that Mother's drug use endangered C.C.H.'s well-being because the child was born with methamphetamine in her system and developed airway disorder and chronic bronchitis as a result. Also, despite using drugs during pregnancy, Mother failed to seek prenatal care for C.C.H. until the last month of gestation.

From the record of Mother's acts prior to C.C.H.'s birth, a rational fact-finder could form a firm belief or conviction that Mother knowingly placed C.C.H. in a condition that endangered her physical well-being. Consequently, we conclude that the evidence was both legally and factually sufficient to support termination of Mother's parental rights under Ground D. We overrule Mother's points of error.[4]

---

[4]Because only one statutory-ground finding is necessary to support a judgment terminating parental rights, and our finding under statutory Ground D satisfies the requirements of due process and due course of law, we need not address Mother's remaining points of error related to other statutory grounds. *See In re L.E.S.*, 471 S.W.3d at 923; *In re N.G.*, 577 S.W.3d at 237.

## IV.    Conclusion

We affirm the trial court's judgment.

Charles van Cleef
Justice

Date Submitted:    October 11, 2022
Date Decided:     October 12, 2022