

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-23-00016-CV
_____


IN THE INTEREST OF H.C., A CHILD



On Appeal from the 307th District Court
Gregg County, Texas
Trial Court No. 2021-1310-DR



Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Justice van Cleef

# MEMORANDUM OPINION

The Department of Family and Protective Services filed a petition to terminate Father's parental rights to his two-year-old daughter, Heather.[1]  Following a bench trial, the trial court terminated Father's parental rights after finding that (1) he engaged in conduct or knowingly placed Heather with persons who engaged in conduct that endangered her physical or emotional well-being, (2) he constructively abandoned Heather, (3) he failed to comply with the provisions of a court order that specifically established the actions necessary for him to obtain Heather's return, (4) he knowingly engaged in criminal conduct that resulted in conviction and confinement that rendered him unable to care for Heather for not less than two years from the date of the Department's petition, and (5) termination of parental rights was in Heather's best interests.[2]  *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(E), (N), (O), (Q), (b)(2).

In his sole point of error on appeal, Father challenges the factual sufficiency of the evidence supporting the trial court's finding that termination of his parental rights was in Heather's best interests.  Because we find that factually sufficient evidence supports the best-interests finding, we overrule Father's sole point of error and affirm the trial court's judgment.

## I.      Factual Background

The evidence at trial showed that Mother was a drug user.  She testified that Father knew she "struggled with addiction" but did not believe he "knew details about it."  Mother and Father were not in a relationship at the time Heather was born on June 22, 2020.  Even so, Father was

---

[1]We use pseudonyms to protect the identity of the child.  *See* TEX. R. APP. P. 9.8.

[2]Although Mother's parental rights were also terminated after she signed an irrevocable affidavit of relinquishment of parental rights, she is not a party to this appeal.

2

present at Heather's birth and visited the hospital often during Mother and Heather's eleven-day stay. Mother testified that, when she was discharged from the hospital, she went "straight to a [rehabilitation facility]" with Heather. Father, who said he never used drugs with Mother, testified that he was not aware Mother was using drugs at the time.

On August 3, 2020, Father was arrested and jailed for theft of property valued at $2,500.00 or more but less than $30,000.00. Father was released from jail on August 12 and, according to Mother, visited Heather "[a]t least every couple days" after he was freed. Mother testified that Father changed diapers, provided clothing and baby food, and attempted to be "[t]he best [father] he could." Mother clarified that the visits always happened in her home and said that she did not leave Heather with Father only because he had no transportation or "stable place" to leave her. On February 26, 2021, Father was jailed. Mother said that, even though Father was jailed, he contacted her "[a] few times here and there," and once released, he saw Heather "every chance he could." Mother testified that she eventually moved to Gladewater, Texas, which eliminated Father's visits because "[i]t was kind of far away." Even so, Father made regular phone calls and continued to help Mother and Heather financially.

On April 3, 2021, the Department received an intake based on Mother's drug use and neglect of Heather. Kimberly DeGrasse, an investigator for the Department, testified that she visited with Mother and Heather in a home that had no connected utilities, was littered with trash, and "did not appear to be livable." Mother admitted to DeGrasse that she was using methamphetamine, but said that Heather was staying with her great-grandmother, Vickie Fox. DeGrasse clarified that Heather's removal from Mother's care was not based on Father's actions,

3

but Jessica Lopez, a conservatorship worker for the Department, noted that Father was arrested while the Department was involved in the case.

Father's criminal records, which were admitted into evidence, showed that, on April 21, 2021, Father was arrested for three crimes: (1) possession of one or more but less than four grams of methamphetamine, (2) fraudulent use or possession of five or more but less than ten items of identifying information, and (3) burglary of a building. Father remained in jail through January 27, 2022. On that date, Father pled guilty to those offenses and the August 2020 theft offense, pled true to the State's enhancement allegations, and was sentenced to five years' imprisonment for all four offenses. As a result, Father was incarcerated for most of Heather's life.

Even though Father was in jail, the trial court ordered him, on August 9, 2021, to complete a psychological evaluation, drug and alcohol dependency assessment, and parenting classes and required him to comply with the Department's family service plan. Lopez testified that she met with Father in jail and reviewed the family service plan, which incorporated the trial court's orders and required Father to "maintain safe and stable housing" and keep in contact with Lopez. According to Lopez, aside from maintaining contact with her, Father did not complete any portion of the family service plan.

At the December 2022 trial, Father acknowledged his family service plan, admitted that services like drug and parenting classes could be completed while he was incarcerated, but said he was not able to take those classes because he was "currently in transit." Father explained that, during the Department's investigation, he was in the Gregg County Jail, was sent to the Choice

4

Moore Transfer Facility in Bonham, Texas, and was later transferred to the George Beto Unit of the Texas Department of Criminal Justice. Father said that, after arriving at the Beto Unit, he signed up for parenting and drug classes in April 2022 but could not begin in the middle of the six-month course. Father, who said he did not have a residence and "was kind of moving around" before his incarceration, admitted he was unable to provide for Heather because of his incarceration. Even so, Father did not wish to have his parental rights to Heather terminated.

Father believed that he would be released eight months after the trial. Because he received jail time credit, he had a projected release date of August 16, 2023, if he was paroled, and a maximum sentence date of April 21, 2026. Father admitted that he was first eligible for parole on November 20, 2021, but was denied. Father, who at the time of trial was drug free and had custody of a five-year-old son,[3] testified that he wished for Heather to be eventually reunited with her half-brother. Father's plan was to live with his sister or mother on his release, work at his step-father's lawn business, and complete the family service plan. In the meantime, Father testified, it was in Heather's best interests to remain with her placement until he attained stability.

Father's sister, Cindy Baker, testified that she had witnessed Father's interactions with Heather. According to Baker, Father was "very great with the baby," loved her, held her, and slept beside her. Baker added, "[Heather] is her daddy's baby. She loved him and he loved her. That's a definite [sic]." Baker said that Father was welcome to stay with her or his mother after

---

[3]Father testified that it had been two years since he last used drugs.

his release and was confident that Father could improve himself. Baker also testified that Father "did a great job at being a dad" to his five-year-old son.

Mother, who had tested positive for methamphetamine during the pendency of the case and had relinquished her parental rights, had mixed feelings about what was in Heather's best interests.[4] Heather had been in the care of both her great-grandparents, the Fox family, and her maternal aunt's family, the Durasoes, for the year preceding trial. Mother testified that it was in Heather's best interests to remain with them, but she also testified that Father's parental rights should not be terminated because he "deserve[d]" the "chance to be [Heather's] dad."

Lopez testified that Heather was thriving in the care of the Foxes and Durasoes, who were also caring for Heather's younger brother. Lopez testified that Heather was bonded to both families but that the Department eventually "hope[d] to move [Heather] and her little brother together to the Duraso home." Lopez testified that the Durasoes would adopt Heather and that termination of Mother's and Father's parental rights was in Heather's best interests. Even so, Lopez testified (1) that Heather was not removed because of any direct action by Father, (2) that there was no evidence Father was ever under the influence of drugs around the child, and (3) that there was no evidence Father was aware Mother was using drugs while the child was in her care. Lopez opined that the services available in jail would help Father be successful on release and said that the Foxes and Durasoes could allow supervised contact with Father if his parental rights were not terminated.

---

[4]Kenneth Reine, II, a laboratory manager at Quest Diagnostics, testified that Mother testified positive for methamphetamine on July 12, August 18, October 27, and November 30, 2021, and June 17, 2022.

6

Heather's aunt, Rachel Duraso, testified that she was a police officer, her husband was a firefighter, and they had two biological children. Rachel said that Heather was bonded to her family and the Fox family, and Vickie testified that Heather received stability and love in both homes. Rachel said that her family would love to adopt Heather and that it was in Heather's best interests to sever ties with Father, who had no significant involvement with the child since her removal.

After hearing this evidence, the trial court terminated Father's parental rights to Heather.

## II.   Standard of Review

"The natural right existing between parents and their children is of constitutional dimensions." *In re E.J.Z.*, 547 S.W.3d 339, 343 (Tex. App.—Texarkana 2018, no pet.) (quoting *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985)). "Indeed, parents have a fundamental right to make decisions concerning 'the care, custody, and control of their children.'" *Id.* (quoting *Troxel v. Granville*, 530 U.S. 57, 65 (2000)). "Because the termination of parental rights implicates fundamental interests, a higher standard of proof—clear and convincing evidence—is required at trial." *Id.* (quoting *In re A.B.*, 437 S.W.3d 498, 502 (Tex. 2014)). "This Court is . . . required to 'engage in an exacting review of the entire record to determine if the evidence is . . . sufficient to support the termination of parental rights.'" *Id.* (quoting *In re A.B.*, 437 S.W.3d at 500). "[I]nvoluntary termination statutes are strictly construed in favor of the parent." *Id.* (alteration in original) (quoting *In re S.K.A.*, 236 S.W.3d 875, 900 (Tex. App.—Texarkana 2007, pet. denied) (quoting *Holick*, 685 S.W.2d at 20)).

"In order to terminate parental rights, the trial court must find, by clear and convincing evidence, that the parent has engaged in at least one statutory ground for termination and that termination is in the child's best interest." *Id.* (citing TEX. FAM. CODE ANN. § 161.001; *In re E.N.C.*, 384 S.W.3d 796, 798 (Tex. 2012)). "'Clear and convincing evidence' is that 'degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established.'" *Id.* (quoting TEX. FAM. CODE ANN. § 101.007). "This standard of proof necessarily affects our review of the evidence." *Id.*

In this case, Father does not challenge the sufficiency of the evidence supporting the statutory grounds for termination of his parental rights. Instead, he challenges only the factual sufficiency of the evidence supporting the trial court's finding that termination of Father's parental rights was in Heather's best interests.

"In our review of factual sufficiency, we give due consideration to evidence the trial court could have reasonably found to be clear and convincing." *In re L.E.S.*, 471 S.W.3d 915, 920 (Tex. App.—Texarkana 2015, no pet.) (citing *In re H.R.M.*, 209 S.W.3d 105, 109 (Tex. 2006) (per curiam)). "We consider only that evidence the fact-finder reasonably could have found to be clear and convincing and determine '"whether the evidence is such that a fact[-]finder could reasonably form a firm belief or conviction about the truth of the . . . allegations."'" *Id.* (alteration in original) (quoting *In re H.R.M.*, 209 S.W.3d at 108 (quoting *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002))). "If, in light of the entire record, the disputed evidence that a reasonable fact[-]finder could not have credited in favor of the finding is so significant that a fact[-]finder could not reasonably have formed a firm belief or conviction, then

8

the evidence is factually insufficient." *Id.* (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)). "'[I]n making this determination,' we must undertake 'an exacting review of the entire record with a healthy regard for the constitutional interests at stake.'" *Id.* (quoting *In re A.B.*, 437 S.W.3d at 503 (quoting *In re C.H.*, 89 S.W.3d at 26)). "We also recognize that the trial court, as the fact-finder, is the sole arbiter of a witness' demeanor and credibility, and it may believe all, part, or none of a witness' testimony." *In re A.M.*, No. 06-18-00012-CV, 2018 WL 3077784, at *3 (Tex. App.—Texarkana June 22, 2018, pet. denied) (mem. op.) (citing *In re H.R.M.*, 209 S.W.3d at 109).

"Despite the profound constitutional interests at stake in a proceeding to terminate parental rights, 'the rights of natural parents are not absolute; protection of the child is paramount.'" *In re L.E.S.*, 471 S.W.3d at 920 (quoting *In re A.V.*, 113 S.W.3d 355, 361 (Tex. 2003) (quoting *In re J.W.T.*, 872 S.W.2d 189, 195 (Tex. 1994))). "A child's emotional and physical interests must not be sacrificed merely to preserve parental rights." *Id.* (quoting *In re C.A.J.*, 459 S.W.3d 175, 179 (Tex. App.—Texarkana 2015, no pet.)).

### III. Factually Sufficient Evidence Supports the Best-Interests Finding

In reviewing Father's challenge to the trial court's best-interests finding, we begin with the "strong presumption that keeping a child with a parent is in the child's best interest." *In re R.W.*, 627 S.W.3d 501, 516 (Tex. App.—Texarkana 2021, no pet.) (quoting *In re J.A.S., Jr.*, No. 13-12-00612-CV, 2013 WL 782692, at *7 (Tex. App.—Corpus Christi–Edinburg Feb. 28, 2013, pet. denied) (mem. op.)). As a result, "[t]ermination "'can never be justified without the most solid and substantial reasons."'" *In re N.L.D.*, 412 S.W.3d 810, 822 (Tex. App.—

9

Texarkana 2013, no pet.) (quoting *Wiley v. Spratlan*, 543 S.W.2d 349, 352 (Tex. 1976)).  In analyzing whether such justification exists, we consider the following *Holley* factors to determine the best interests of the child:

> (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals, (6) the plans for the child by these individuals, (7) the stability of the home, (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent.

*Id.* at 818–19 (citing *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976)); *see In re E.N.C.*, 384 S.W.3d 796, 807 (Tex. 2012); *see also* TEX. FAM. CODE ANN. § 263.307(b).  These factors are not exhaustive, and there is no requirement that all of them be proved to terminate parental rights.  *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002).

The first *Holley* factor requires us to review the child's desires, but Heather was too young to express them.  "When children are too young to express their desires, the fact[-]finder may consider that the children have bonded with the [placement], are well-cared for by them, and have spent minimal time with a parent."  *In re R.W.*, 627 S.W.3d 501, 517 (Tex. App.—Texarkana 2021, no pet.) (first alteration in original) (citing *In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.)).  Here, there was ample evidence showing that Heather was bonded to both the Fox and Duraso families and was thriving under their care.  It was uncontested that Father had been absent for most of Heather's life due to his incarceration and had not seen the child since April 21, 2021.  Even so, Father and Baker testified that Father loved Heather and was bonded to her.  Given this conflicting evidence, we find the first *Holley*

factor neutral. *See In re R.H.*, No. 06-20-00083-CV, 2021 WL 1704264, at \*14 (Tex. App.—Texarkana Apr. 30, 2021, pet. denied) (mem. op.).

As for the second and third factors, while Heather's emotional and physical needs were great due to her young age, the record showed that Father was unable to meet them. Even before his incarceration, Father admitted that he did not have a residence and "was kind of moving around," and Mother testified that Father had no "stable place" or transportation. Father admitted that he had no income and was unable to provide for Heather because of his incarceration. Although he believed he could be released on parole eight months after the trial, Father's parole was not guaranteed, especially since parole had once been denied. Since it was possible that Father could remain in jail until April 2026, nothing suggested that Father would be able to attain stability, earn income, or provide a home for Heather before that time. "A parent who lacks stability, income, and a home is unable to provide for a child's emotional and physical needs." *In re Z.M.*, 456 S.W.3d 677, 689 (Tex. App.—Texarkana 2015, no pet.) (quoting *In re J.T.G.*, No. 14-10-00972-CV, 2012 WL 171012, at \*17 (Tex. App.—Houston [14th Dist.] Jan. 19, 2012, pet. denied) (mem. op.)). We find that the second and third *Holley* factors weigh heavily in favor of terminating Father's parental rights.

The fourth *Holley* factor requires us to look at Father's parenting abilities. Mother testified that Father was a good parent when visiting Heather, and Baker testified that Father was "very great with [Heather]" and his five-year-old son. Even so, due to his criminal activity after Heather was born, which reflected his poor choices, Father was absent for most of Heather's life and from the life of his son, rendering him unable to parent either child. *See In re K.O.*, 488

11

S.W.3d 829, 842 (Tex. App.—Texarkana 2016, pet. denied) ("[P]ast performance as a parent [is] . . . relevant in determining the child's best interest.") (quoting *In re A.T.*, No. 06-14-00091-CV, 2015 WL 733275, at *5 (Tex. App.—Texarkana Feb. 18, 2015, no pet.) (mem. op.)). Father's lack of parental ability was also shown when he admitted that he had used drugs, even though he had custody of his son, and when he was caught with methamphetamine after the Department became involved with Heather. *See In re B.L.H.*, 609 S.W.3d 271, 281 (Tex. App.—Texarkana 2020, pet. denied) ("use of drugs during the pendency of the case. . . demonstrated a lack of parental abilities"); *see also In re M.C.*, 482 S.W.3d 675, 688 (Tex. App.—Texarkana 2016, pet. denied) ("Parental drug abuse, which reflects poor judgment, is also a factor that may be considered when determining the child[ren]'s best interest[s]."). We find that the fourth *Holley* factor weighs heavily in favor of terminating parental rights.

As for fifth *Holley* factor—the programs available to assist Father—the record shows that Father had been unable to complete parenting or drug classes because of his incarceration. Lopez testified that the programs available at the Beto Unit would help Father be successful on release, and Father testified that he wished to complete them. Even so, because Father did not complete the portion of his family service plan that required a psychological evaluation, the fact-finder could have determined that Father did not avail himself of assistance available to him. We find that the fifth *Holley* factor weighs only slightly in favor of parental-rights termination.

Next, we conclude that the sixth and seventh *Holley* factors weigh in favor of terminating Father's parental rights to Heather. Father had no stable home and no guarantee of release from confinement. As a result, Father acknowledged that it was in Heather's best interests to remain

12

with the Foxes and Durasoes until he attained stability, but Father's ability to do so was not guaranteed. The evidence showed that Heather was thriving under the shared arrangement between the Fox and Duraso families, and the Department's plan was for Heather to eventually be adopted by the Durasoes, who loved and cared for Heather.

As for the last *Holley* factors, Father had no excuse for his drug use and criminal activity occurring after the Department's involvement, which exposed Heather to the loss of a parent. Even before he was arrested, Father had no stable home to provide Heather or his five-year-old son. The record showed that, after his arrest in April 2021 for possession of methamphetamine, among other crimes, Father remained in jail and was absent from Heather's life. Those facts indicated that the existing parent-child relationship was not a proper one. *See In re L.C.L.*, 599 S.W.3d 79, 85 (Tex. App.—Houston [14th Dist.] 2020, pet. denied) (concluding that parent's criminal conduct, which resulted in the parent's imprisonment and absence from child's life, created an "emotional vacuum" in the child's life that endangered the child's well-being). We find that the remaining *Holley* factors weigh in favor of terminating Father's parental rights to Heather.

After weighing all the evidence and considering the *Holley* factors, we conclude that factually sufficient evidence supported the trial court's best-interests finding. As a result, we overrule Father's sole point of error.

## IV. Conclusion

We affirm the trial court's judgment.

Charles van Cleef
Justice

Date Submitted:     May 18, 2023
Date Decided:       May 24, 2023