**Opinion filed May 25, 2023**



# In The

# Eleventh Court of Appeals

_____

## No. 11-22-00332-CV

_____

## IN THE INTEREST OF L.R., A CHILD

---

**On Appeal from the 326th District Court**

**Taylor County, Texas**

**Trial Court Cause No. 10487-CX**

---

## M E M O R A N D U M   O P I N I O N

This is an appeal from an order in which the trial court terminated the parental rights of the mother and the father of L.R. Both parents filed an appeal. On appeal, each parent presents a single issue challenging the sufficiency of the evidence to support the trial court's finding that the termination of his or her parental rights is in the best interest of L.R. Because we disagree with the parents' contentions, we affirm the order of the trial court.

## I. *Termination Findings and Standards*

The termination of parental rights must be supported by clear and convincing evidence. TEX. FAM. CODE ANN. § 161.001(b) (West 2022). To terminate parental rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(b)(1)(A)–(U) and that termination is in the best interest of the child. *Id.* In this case, the trial court found that each parent had committed three of the acts listed in Section 161.001(b)(1)—those found in subsections (D), (E), and (O). Neither parent challenges these findings on appeal.

The trial court also found, pursuant to Section 161.001(b)(2), that termination of the mother's and the father's parental rights would be in the best interest of the child. *See id.* § 161.001(b)(2). Each parent challenges the sufficiency of the evidence to support the trial court's respective best interest finding.

To determine if the evidence is legally sufficient in a parental termination case, we review all of the evidence in the light most favorable to the finding and determine whether a rational trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). To determine if the evidence is factually sufficient, we give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002). We note that the trial court is the sole arbiter of the credibility and demeanor of witnesses. *In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014) (citing *In re J.L.*, 163 S.W.3d 79, 86–87 (Tex. 2005)).

With respect to the best interest of a child, no unique set of factors need be proved. *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied). But courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not

limited to, (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent–child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Id.* Additionally, evidence that proves one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *C.J.O.*, 325 S.W.3d at 266.

## II. *Evidence Presented at Trial*

The record shows that the Department of Family and Protective Services became involved in this case when L.R. was one year old.[1] The initial intake in this case was based upon domestic violence between the mother and the father. During the Department's investigation, the mother informed the investigator that she and the father got into an argument and then the father punched the television, kneed the mother in the forehead, and threw her to the ground. Approximately two months after the initial intake in this case, the Department received an intake based upon law enforcement's execution of a search warrant at the parents' residence. Drugs, drug paraphernalia, and stolen items were found in the parents' residence, and both parents were arrested that night. No other adult was present to take care of L.R. After being removed from his parents' care and taken into the Department's custody, L.R. tested positive for methamphetamine at the level of 87,111 pg/mg.

---

[1]The record shows that the Department had also been involved with the family at the time of L.R.'s birth. During the hearing on termination, the mother invoked her Fifth Amendment rights when asked if L.R. had tested positive at birth for methamphetamine.

The permanency case manager testified that the Department created a family service plan for the mother and for the father. Each parent was required by court order to comply with his or her service plan. The case manager testified regarding the parents' compliance with their service plans.

According to the case manager, the mother, prior to her rearrest, refused to allow the Department to visit her home and also refused to submit to drug tests. At the time of trial, the mother was incarcerated—and had been for approximately thirteen months. Consequently, she was unable to comply with some of the requirements of her service plan, but she did continue to visit L.R. and maintain a relationship with him. The mother testified that she loved L.R. and believed that L.R. needed for her to remain in his life.

The record shows that the mother, for years, had led a life of "instability." Her parental rights to her older son were terminated in 2015. Furthermore, she had significant criminal history, including convictions for the following offenses: possession of methamphetamine with the intent to deliver, a second-degree felony; theft of a firearm, a state jail felony; theft, a state jail felony; forgery, a third-degree felony; credit card abuse, a state jail felony; and theft, a class B misdemeanor. Four of the above offenses were committed after L.R. was born, and one of them was committed while this case was pending in the trial court.

Likewise, the father had significant criminal history and was unable to comply with some of the requirements of his service plan because he was rearrested approximately two months after L.R.'s removal. At the time of trial, the father had been incarcerated for approximately thirteen months. Prior to his rearrest, however, the father tested positive for methamphetamine.

The father testified that he had been convicted in a federal case for the offense of conspiracy to effect unauthorized transactions with an access device and was currently serving a thirty-month sentence for that offense. The father also testified

4

that he had criminal charges pending against him in Taylor County for the offenses of fraudulent possession of identifying information, possession of methamphetamine, organized criminal activity, credit card abuse, assault family violence, burglary of a vehicle, unlawful carrying of a weapon, theft, and theft of a firearm—charges which arose in 2019, 2020, and 2021, both before and after L.R.'s birth. The father invoked his Fifth Amendment rights when asked about other criminal history.

L.R. was two years old at the time of the final hearing on termination. Upon removal, he was placed with his maternal grandparents and remained with them at the time of trial. L.R.'s older brother also lived there. According to the case manager, L.R. was doing well in his grandparents' care. They provided him with a safe and stable home and were protective of him. The Department's plan was for the parental rights of both parents to be terminated and for the grandparents to adopt L.R. The case manager believed that termination of the parental rights of both parents would be in L.R.'s best interest.

### III. *Analysis—Best interest findings are supported by the evidence*

In each parent's sole issue, they assert that the evidence presented at trial was insufficient to prove by clear and convincing evidence that the termination of that parent's parental rights would be in the best interest of L.R. The trial court, as the trier of fact, is the sole judge of the witnesses' credibility. *A.B.*, 437 S.W.3d at 503. We are not at liberty to disturb the determinations of the trier of fact as long as those determinations are not unreasonable. *J.P.B.*, 180 S.W.3d at 573. Giving due deference to the trial court, we hold that, based on the evidence presented at trial and the *Holley* factors, the trial court could reasonably have formed a firm belief or conviction that termination of the mother's and the father's parental rights would be in the best interest of L.R. *See Holley*, 544 S.W.2d at 371–72.

As set forth above, the Department presented evidence that the mother and the father engaged in domestic violence and various criminal activity in L.R.'s presence. L.R. tested positive for methamphetamine at a high level shortly after being removed from the parents' care. Both parents had significant criminal history and engaged in a course of conduct that endangered L.R. Upon considering the record as it relates to the actions of the mother and the father, the child being exposed to methamphetamine while in the parents' care, the emotional and physical danger to the child now and in the future, the desires of the child (who was too young to express any desire), the emotional and physical needs of the child now and in the future, the parental abilities of those involved, and the plans for the child by the Department, we hold that the evidence is legally and factually sufficient to support (1) the finding that termination of the mother's parental rights is in the best interest of the child and (2) the finding that termination of the father's parental rights is in the best interest of the child. *See id.* We defer to the trial court's findings as to the child's best interest, *see C.H.*, 89 S.W.3d at 27, and we cannot hold in this case that the trial court's findings as to best interest are not supported by clear and convincing evidence. Accordingly, we overrule each parent's sole issue on appeal.

## IV. *This Court's Ruling*

We affirm the order of the trial court.

W. BRUCE WILLIAMS
JUSTICE

May 25, 2023

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.