**Opinion filed October 20, 2022**



In The

# Eleventh Court of Appeals

_____

## No. 11-22-00110-CV
_____

## IN THE INTEREST OF T.G. AND C.M., CHILDREN

**On Appeal from the 90th District Court**

**Stephens County, Texas**

**Trial Court Cause No. CV32821**

## MEMORANDUM OPINION

This is an appeal from an order in which the trial court terminated the parental rights of the parents of T.G. and C.M. The mother filed this appeal. On appeal, she presents one issue in which she challenges the trial court's finding that the termination of her parental rights was in the children's best interest. We affirm the order of the trial court.

### I. *Termination Findings and Standards*

The termination of parental rights must be supported by clear and convincing evidence. TEX. FAM. CODE ANN. § 161.001(b) (West 2022). To terminate parental

rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(b)(1)(A)–(U) and that termination is in the best interest of the child. *Id.* In this case, the Department of Family and Protective Services abandoned all but one of the grounds that it had alleged in its petition. Thereafter, the trial court found that the evidence supported that ground: Section 161.001(b)(1)(O). Appellant does not challenge this finding on appeal.

The trial court also found, pursuant to Section 161.001(b)(2), that termination of Appellant's parental rights would be in the best interest of the children. *See id.* § 161.001(b)(2). In her sole issue on appeal, Appellant challenges the sufficiency of the evidence to support the trial court's best interest finding.

To determine if the evidence is legally sufficient in a parental termination case, we review all of the evidence in the light most favorable to the finding and determine whether a rational trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). To determine if the evidence is factually sufficient, we give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002). We note that the trial court is the sole arbiter of the credibility and demeanor of witnesses. *In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014) (citing *In re J.L.*, 163 S.W.3d 79, 86–87 (Tex. 2005)).

With respect to the best interest of a child, no unique set of factors need be proved. *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied). But courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to, (1) the desires of the child, (2) the emotional and physical needs of the

child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent–child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Id.* Additionally, evidence that proves one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *C.J.O.*, 325 S.W.3d at 266.

## II. *Evidence and Analysis*

The uncontroverted evidence shows that the children were removed from Appellant's care due to abuse and neglect,[1] that the Department made reasonable efforts to return the children to their parents, and that Appellant failed to comply with the provisions of her court-ordered family service plan. The family service plan included provisions that required Appellant to complete parenting classes, attend counseling, obtain a substance abuse assessment, submit to a psychological evaluation, obtain an MHMR assessment, submit to random drug testing, and obtain stable housing and employment; none of which Appellant did—except for a partial psychological evaluation. Additionally, Appellant failed to demonstrate that she could maintain a clean and sober lifestyle.

---

[1]We note that the Department failed to present any testimony or other evidence regarding the specific allegations of abuse and neglect or the reasons for the intake in this case. We also note that we are not permitted to consider the contents of the clerk's record, such as the original petition and the affidavit in support of removal, as evidence. *See In re F.M.E.A.F.*, 572 S.W.3d 716, 723 (Tex. App.—Houston [14th Dist.] 2019, pet. denied) (stating that no factual statements or allegations that are contained in the clerk's record, but were not admitted during the final hearing, may be considered as evidence by an appellate court when reviewing the sufficiency of the evidence).

Appellant used methamphetamine while the children were in her care, and she continued to use methamphetamine after the children were removed from her care. Appellant did not think that her use of methamphetamine affected her ability to parent her children, and she denied that she was an addict. Appellant stated that she used methamphetamine in order to "cope." Ironically, Appellant refused to take any medication prescribed by MHMR because she did not believe in taking prescriptions and did not want "to be altered by prescription drugs."

In addition to her drug use, Appellant had mental health issues, exhibited erratic behaviors, and engaged in a relationship—with C.M.'s father—in which domestic violence occurred. Appellant refused to attend counseling—despite her PTSD diagnosis and her acknowledgement that she was very traumatized as a result of the severe abuse she suffered as a child. Appellant also failed to attend any parenting classes. Furthermore, throughout the time that this case was pending below, Appellant failed to obtain employment or stable housing. Although she appeared to love her children, Appellant failed to do what was necessary to have the children returned to her care.

Appellant attended a majority of her scheduled visits with the children. However, she usually arrived quite late for visitation, and police had to be called one time to escort Appellant from the building because she became very emotional and aggressive. During the visits, Appellant played "sad music" and was emotional, which often made T.G. cry. T.G. acted out after visits with Appellant. She would cry, scream, yell, kick, and hit.

The Department's plan for the children was for them to remain in the care of and be adopted by their respective placements. T.G., who had just turned five years old at the time of trial, was placed in foster care early on in the case after the maternal relative with whom T.G. was placed tested positive for methamphetamine. T.G.

remained with those same foster parents at the time of trial, and they intended to adopt T.G. if she became available for adoption. T.G. and her foster parents were bonded, and she was doing well in their care. C.M., who was three years old at the time of trial, was placed with his paternal grandparents until the day before trial commenced. He was removed from his grandparents and placed with a paternal aunt because the grandparents were allowing C.M.'s father to have unsupervised and unapproved visits with C.M. C.M.'s aunt and uncle had a preexisting relationship with C.M. and were bonded with him; they wished to adopt C.M. if he became available for adoption.

The children's attorney ad litem and their guardian ad litem each recommended that Appellant's parental rights be terminated. They, along with the permanency case manager for 2INgage, believed that termination of Appellant's parental rights would be in the best interest of the children.

The trial court, as the trier of fact, is the sole judge of the witnesses' credibility. *A.B.*, 437 S.W.3d at 503. We are not at liberty to disturb the determinations of the trier of fact as long as those determinations are not unreasonable. *J.P.B.*, 180 S.W.3d at 573. Giving due deference to the trial court, we hold that, based on the evidence presented at trial and the *Holley* factors, the trial court could reasonably have formed a firm belief or conviction that termination of Appellant's parental rights would be in the best interest of T.G. and C.M. *See Holley*, 544 S.W.2d at 371–72. Upon considering the record as it relates to the desires of the children, the emotional and physical needs of the children now and in the future, the emotional and physical danger to the children now and in the future, the parental abilities of those involved, the plans for the children by the Department, Appellant's drug use, the occurrence of domestic violence between Appellant and C.M.'s father, concerns regarding Appellant's mental health, and the instability of Appellant's situation, we hold that

the evidence is legally and factually sufficient to support the finding that termination of Appellant's parental rights is in the best interest of T.G. and C.M. *See id.* We defer to the trial court's finding as to the children's best interest, *see C.H.*, 89 S.W.3d at 27, and we cannot hold in this case that the trial court's finding as to best interest is not supported by clear and convincing evidence. Accordingly, we overrule Appellant's sole issue.

### III. *This Court's Ruling*

We affirm the order of the trial court.


W. BRUCE WILLIAMS

JUSTICE


October 20, 2022

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.