**Opinion filed February 23, 2023**



# In The

# Eleventh Court of Appeals

_____

## No. 11-22-00252-CV

_____

## IN THE INTEREST OF A.T., A CHILD

**On Appeal from the 90th District Court**
**Stephens County, Texas**
**Trial Court Cause No. CV32759**

## M E M O R A N D U M   O P I N I O N

This is an appeal from an order in which the trial court, based upon the jury's unanimous verdict, terminated the parental rights of A.T.'s mother and father and appointed the Department of Family and Protective Services as the child's permanent managing conservator. The mother filed this appeal. On appeal, she presents two issues in which she asserts (1) that the trial court's jurisdiction expired before trial commenced and (2) that the evidence is insufficient to support a finding that termination is in the child's best interest. We affirm the order of the trial court.

## I. *Trial Court's Jurisdiction*

In her first issue, Appellant asserts that the trial court lacked jurisdiction to terminate Appellant's parental rights because the trial court did not enter an appropriate order extending the one-year dismissal deadline. The section of the Family Code upon which Appellant relies provides in relevant part as follows:

> (a) Unless the court has commenced the trial on the merits or granted an extension under Subsection (b) or (b-1), on the first Monday after the first anniversary of the date the court rendered a temporary order appointing the department as temporary managing conservator, the court's jurisdiction over the suit affecting the parent-child relationship filed by the department . . . is terminated and the suit is automatically dismissed without a court order. . . .

> (b) Unless the court has commenced the trial on the merits, the court may not retain the suit on the court's docket after the time described by Subsection (a) unless the court finds that extraordinary circumstances necessitate the child remaining in the temporary managing conservatorship of the department and that continuing the appointment of the department as temporary managing conservator is in the best interest of the child. If the court makes those findings, the court may retain the suit on the court's docket for a period not to exceed 180 days after the time described by Subsection (a).

TEX. FAM. CODE ANN. § 263.401(a), (b) (West Supp. 2022).

The facts pertinent to this issue thus relate to certain dates, including the date upon which the trial court entered an order regarding temporary conservatorship, the dismissal date as mandated by the Family Code, and the date that trial commenced. The record shows that the Department of Family and Protective Services filed the original petition in this cause on January 14, 2021, and that the trial court entered its emergency order appointing the Department as the temporary sole managing conservator of the child on January 25, 2021. In an order dated July 14, 2021, the trial court correctly indicated that the dismissal date was January 31, 2022. However, both Appellant and the Department subsequently filed motions to extend

the dismissal date and retain the suit on the trial court's docket. Thereafter, on January 12, 2022, prior to the original dismissal date, the trial court determined that extraordinary circumstances necessitated that the child remain in the temporary managing conservatorship of the Department and that it would be in the child's best interest to do so. In its January 12 order, the trial court retained the case on its docket and set a new dismissal date of July 30, 2022, which was 180 days after the original dismissal date. Trial commenced on July 5, 2022—prior to the new July 30 dismissal date. Therefore, because the trial court followed the mandates of Section 263.401 with respect to the timeliness of its extension order, the requirements of Section 263.401(b), and the commencement of trial, the trial court retained jurisdiction and its order of termination is not void. *See In re G.X.H.*, 627 S.W.3d 288, 296–301 (Tex. 2021) (holding that the mere entry on trial court's docket sheet was sufficient to retain jurisdiction in a termination suit and extend the dismissal deadline under Section 263.401).

Appellant contends, however, that the trial court's January 12 order retaining the suit on its docket and extending the dismissal date was somehow deficient because the trial court did not make "any findings particularized to the instant case" but, instead, "merely regurgitate[d] the exact wording of the statute." We disagree.

The first paragraph of the trial court's January 12 order provides as follows:

> Pursuant to § 263.401(b), Texas Family Code, the Court finds that this Court has continuing jurisdiction of this suit, and that extraordinary circumstances necessitate the child remaining in the temporary managing conservatorship of the Department and that continuing the appointment of the Department as temporary managing conservator is in the best interest of the child. An order to retain the case on the Court's docket should be granted.

Following the above paragraph, the trial court made additional findings under Sections 263.401(b-2) and (b-3) and set a new dismissal date that was 180 days after the original dismissal date. The trial court's order tracks the language of

Sections 263.401(b), (b-2), and (b-3). As such, we hold that the January 12 order was appropriate and complied with the requirements of Section 263.401 and that the trial court therefore retained jurisdiction over the case at the time that it commenced the trial.

Furthermore, because Appellant did not raise her complaints about any deficiency in the trial court's January 12 order, she has waived them. In *G.X.H.*, the supreme court ruled that "while a trial court's failure to timely extend the automatic dismissal date before that date passes—through a docket-sheet notation or otherwise—is jurisdictional, claimed defects relating to the other requirements of [Section] 263.401(b) are not." 627 S.W.3d at 301. The supreme court therefore held that, other than a complaint regarding the trial court's failure to extend the automatic dismissal date before it passes, complaints regarding the trial court's compliance with the requirements of Section 263.401(b) "must be preserved for appellate review." *Id.* Because Appellant failed to preserve her complaints about the deficiency of the trial court's order in this case, we hold that her complaints regarding the form of the order are waived. *See id.*; *see also* TEX. R. APP. P. 33.1. We overrule Appellant's first issue.

## II. *Termination Findings and Standards*

In her second issue, Appellant challenges the sufficiency of the evidence presented at trial. Appellant's sufficiency challenge is limited to the best interest finding. Under this issue, Appellant specifically contends that the Department failed to meet its burden of proof as to best interest because the Department "failed to identify, locate, or contact the relatives of the Child within the fourth degree of consanguinity or other placement options."

The termination of parental rights must be supported by clear and convincing evidence. TEX. FAM. CODE ANN. § 161.001(b) (West 2022). To terminate parental rights, it must be shown by clear and convincing evidence that the parent has

committed one of the acts listed in Section 161.001(b)(1)(A)–(U) and that termination is in the best interest of the child. *Id.* In this case, the jury and the trial court found that Appellant had committed three of the acts listed in Section 161.001(b)(1)—those found in subsections (D), (E), and (O). *See id.* They also found, pursuant to Section 161.003(a), that Appellant suffered from a mental or emotional illness or a mental deficiency that rendered her unable to provide for the physical, emotional, and mental needs of the child—a condition that would continue until the child's eighteenth birthday. *See id.* § 161.003(a). Appellant does not challenge any of these findings on appeal.

The jury and the trial court also found, pursuant to Section 161.001(b)(2), that termination of Appellant's parental rights would be in the best interest of A.T. *See id.* §§ 161.001(b)(2), .003(a)(5). As noted above, Appellant's second issue on appeal relates only to the sufficiency of the evidence to support the best interest finding.

To determine if the evidence is legally sufficient in a parental termination case, we review all of the evidence in the light most favorable to the finding and determine whether a rational trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). To determine if the evidence is factually sufficient, we give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002). We note that the trier of fact below is the sole arbiter of the credibility and demeanor of witnesses. *In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014) (citing *In re J.L.*, 163 S.W.3d 79, 86–87 (Tex. 2005)).

With respect to the best interest of a child, no unique set of factors need be proved. *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied). But courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not

limited to, (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent–child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Id.* Additionally, evidence that proves one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *C.J.O.*, 325 S.W.3d at 266.

A. *Evidence Presented at Trial*

The record shows that the Department became involved with A.T. when she was three months old. At that time, Appellant was suffering from mental health issues. She was admitted to Oceans Behavioral Hospital for emergency mental health treatment and A.T. was temporarily placed with Appellant's mother (M.T.), who intervened in the suit below. M.T., however, was not approved to continue as a placement for A.T. because M.T. tested positive for methamphetamine. A.T. was then placed in foster care, and family service plans were created for Appellant, the child's father, and M.T. with the goal being to return A.T. to her family. That, however, never occurred.

The father did not participate in the services required by his family service plan and did not exercise any visitation with A.T. Furthermore, the father and Appellant engaged in domestic violence. Neither the father nor his family desired to be a placement for A.T. and the father's grandmother was already raising a young child that belonged to Appellant and the father.

During the six-day jury trial, the Department presented extensive evidence—including audio recordings of Appellant's threats and bizarre discussions, testimony from law enforcement officers who had encountered Appellant multiple times, testimony from two of the permanency case managers for 2INgage, and testimony from medical experts regarding Appellant's mental health—from which the jury and the trial court could have readily determined that Appellant was a danger to her child. One example of Appellant's behavior that indicated she would be a danger to her child occurred during a supervised visit with A.T. While she was changing A.T.'s diaper, Appellant observed that A.T. had diarrhea. As a result of Appellant's bizarre accusations that stemmed from this diaper change, A.T. (who was a mere seven or eight months old) was subjected to a medical examination to rule out Appellant's allegations that A.T.'s hymen had been perforated while in foster care.

Appellant did not complete all of the services required of her in her court-ordered family service plan—particularly the services related to Appellant's mental health. Appellant had a protracted history of mental health issues and had been diagnosed with various mental health disorders, including a "delusional disorder" that would affect Appellant's ability to safely parent a child. M.T. explained that Appellant's version of reality is not necessarily accurate but it is "very real to her." One of the doctors who treated Appellant testified that her long-term prognosis was concerning. Appellant continued to have unresolved mental health issues and, while this case was pending below, was admitted to both Oceans Behavioral Hospital and Mesa Springs Hospital, an inpatient psychiatric facility that mainly provides crisis stabilization. It was also reported that Appellant was, at times, suicidal and homicidal.

While this suit was pending below, Appellant engaged in criminal activity. Appellant was confined in county jail at the time of trial; she had been charged with assault family violence—with a deadly weapon, terroristic threat, and harassment,

all of which remained pending against Appellant at that time. The victim of the alleged harassment and terroristic threat was one of the permanency case managers assigned to work with the family in this case. The victim of the alleged assault family violence was M.T. Just four months prior to trial, police were dispatched to M.T.'s residence in response to a 9-1-1 call relating to Appellant and M.T. Appellant had threatened M.T. and attacked her with a knife or a turkey fork upon accusing her of sexually abusing A.T. (who had been in foster care for over a year). M.T. explained that during this incident, Appellant did not believe that M.T. was really M.T. but, instead, was an imposter. When law enforcement arrived on scene, Appellant informed them that "these people" stole her parents' identity and that "[t]hat bitch touched my kid." Appellant also indicated that she was pregnant "with a potato" and wanted an abortion.

Although M.T. desired to be a managing conservator for A.T., M.T. continued to test positive for methamphetamine. Despite these test results, M.T. emphatically denied having used methamphetamine in "years." Further, because M.T. was unable to protect herself from Appellant, the Department did not believe that she could protect A.T. either. The jury found that M.T. should not be named as a managing conservator or even a possessory conservator of A.T. As a result, the trial court entered judgment that M.T. take nothing and that her suit in intervention be dismissed.[1]

Because the Department found no suitable family members that desired to be a placement for A.T., the Department's plan for A.T. was for her to remain in the care of, and ultimately be adopted by, her foster parents. A.T. had been placed with the same foster parents shortly after she was removed from Appellant's care; at the time

---

[1]We note that although M.T. did not file a notice of appeal, she prepared a response and submitted it to us as her "appeal brief." We received that response and reviewed its contents prior to issuing this opinion.

of trial, A.T. had lived with them for one and one-half years. A.T. was doing very well in their care and had become part of their family. The foster mother testified that she and her husband were able to provide a safe home for A.T. and that they intended to adopt A.T. if she became available for adoption. The permanency case managers who testified at trial believed that it would be in A.T.'s best interest for Appellant's parental rights to be terminated. A.T.'s attorney ad litem "begged" the jury to protect A.T. and not return her to the chaos of Appellant's and M.T.'s household. The ad litem asked the jury to find that termination of Appellant's parental rights was in A.T.'s best interest.

B. *Analysis*

The trier of fact in the trial court is the sole judge of the witnesses' credibility. *A.B.*, 437 S.W.3d at 503. We are not at liberty to disturb the determinations of the trier of fact as long as those determinations are not unreasonable. *J.P.B.*, 180 S.W.3d at 573. Giving due deference to the jury and the trial court, we hold that, based on the evidence presented at trial and the *Holley* factors, the jury and the trial court could reasonably have formed a firm belief or conviction that termination of Appellant's parental rights would be in the best interest of A.T. *See Holley*, 544 S.W.2d at 371–72. Upon considering the record as it relates to (1) the desires of the child (who was too young to express any desire), (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of those involved, (5) the plans for the child by the Department, (6) Appellant's criminal activity while the case was pending below, (7) Appellant's continuing mental health issues, and (8) the instability of Appellant's situation, we hold that the evidence is legally and factually sufficient to support the finding that termination of Appellant's parental rights is in the best interest of A.T. *See id.* We defer to the finding of the trier of fact below as

9

to A.T.'s best interest, *see C.H.*, 89 S.W.3d at 27, and we cannot hold in this case that the finding as to best interest is not supported by clear and convincing evidence.

Under her challenge to the sufficiency of the evidence to support the best interest finding, Appellant asserts that, in addition to the *Holley* factors, we should consider whether the Department complied with its burden to identify, locate, and contact other relatives and placement options that would allow Appellant to retain her parental rights. While we do not agree that any failure of the Department in this regard would prevent a trier of fact from finding that termination of a parent's parental rights would be in a child's best interest, we have nonetheless reviewed the record to address Appellant's contention. *See In re G.B. II*, 357 S.W.3d 382, 384 (Tex. App.—Waco 2011, no pet.) (holding that the Department's failure to conduct or obtain a home study pursuant to Section 262.114 was not a bar to termination); *see also In re G.B.*, No. 06-20-00031-CV, 2020 WL 4589761, at *2 (Tex. App.—Texarkana Aug. 11, 2020, no pet.) (holding that there is no duty to place a child with a relative before the parent's parental rights may be terminated).

The record in this case shows that the Department satisfied its statutory duties to attempt to locate relatives and fictive kin to be a placement for A.T. *See* FAM. § 262.114(a) (providing that the Department must perform a background and criminal history check of relatives or other designated individuals identified as a potential relative or designated caregiver), § 262.1095(a), (d), (e) (providing that the Department must use due diligence to identify and locate relatives and potential caregivers and that the failure of a parent to complete the child placement resources form does not relieve the Department of its duty to seek out information). In addition to providing at least two child placement resources forms to Appellant, the Department also attempted to locate friends and family members. One of the permanency case managers testified that she completed a "Finders" report on A.T.'s parents but that neither the report nor her discussions with the family revealed any

suitable relatives. The Department also (1) conducted a home study on M.T., which was not approved; (2) ruled out M.T.'s brother, either based on his criminal or CPS history; and (3) contacted Appellant's sister, M.T.'s mother, a friend whom Appellant listed as a potential placement, A.T.'s father, and members of the father's family— all of whom declined to be considered as a potential placement for A.T. Thus, as far as the Department was aware, after attempting to locate A.T.'s relatives and fictive kin, none of the relatives or fictive kin were viable placement options.

Under the circumstances present in this case, we cannot hold that the Department failed in its duties under the Family Code. Moreover, any failure of the Department to locate other relatives or fictive kin for the potential placement of A.T. does not alter our conclusion that the evidence is legally and factually sufficient to support the finding of the trier of fact that the termination of Appellant's parental rights would be in A.T.'s best interest. We overrule Appellant's second issue on appeal.

### III. *This Court's Ruling*

We affirm the order of the trial court.


W. STACY TROTTER

JUSTICE


February 23, 2023

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.