**Opinion filed April 13, 2023**



In The

# Eleventh Court of Appeals

_____

## No. 11-22-00296-CV

_____

## IN THE INTEREST OF N.B., A.B., V.Z., A.Z., A.Z., AND A.Z., CHILDREN

---

### On Appeal from the 326th District Court
### Taylor County, Texas
### Trial Court Cause No. 10437-CX

---

### M E M O R A N D U M   O P I N I O N

This is an appeal from an order in which the trial court terminated the parental rights of the mother and the respective fathers of N.B., A.B., V.Z., A.Z., A.Z., and A.Z. The mother filed this appeal. On appeal, she presents two issues in which she challenges the trial court's findings that the termination of her parental rights would be (1) in N.B.'s best interest and (2) in A.B.'s best interest. We affirm the order of the trial court.

## I. *Termination Findings and Standards*

The termination of parental rights must be supported by clear and convincing evidence. TEX. FAM. CODE ANN. § 161.001(b) (West 2022). To terminate parental rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(b)(1)(A)–(U) and that termination is in the best interest of the child. *Id.* In this case, the trial court found that Appellant had committed three of the acts listed in Section 161.001(b)(1)— those found in subsections (D), (E), and (O). Appellant does not challenge these findings on appeal.

The trial court also found, pursuant to Section 161.001(b)(2), that termination of Appellant's parental rights would be in the best interest of her children. *See id.* § 161.001(b)(2). On appeal, Appellant challenges both the legal and factual sufficiency of the evidence to support the trial court's best interest finding as to N.B. and A.B. Appellant does not challenge the trial court's best interest finding as to her four youngest children.

To determine if the evidence is legally sufficient in a parental termination case, we review all of the evidence in the light most favorable to the finding and determine whether a rational trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). To determine if the evidence is factually sufficient, we give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002). We note that the trial court is the sole arbiter of the credibility and demeanor of witnesses. *In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014) (citing *In re J.L.*, 163 S.W.3d 79, 86–87 (Tex. 2005)).

With respect to the best interest of a child, no unique set of factors need be proved. *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied).

But courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to, (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent–child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Id.* Additionally, evidence that proves one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *C.J.O.*, 325 S.W.3d at 266.

## II. *Evidence and Analysis*

The record shows that the Department of Family and Protective Services became involved with Appellant, Appellant's six children, and C.Z. (the father of the four youngest children) in February 2021 based upon concerns regarding Appellant's and C.Z.'s use of methamphetamine and marihuana, Appellant's and C.Z.'s exchange of food stamps for alcohol, N.B.'s truancy from school, the dirty condition of the children, and C.Z.'s criminal history. Approximately two weeks after the initial intake, the Department received another intake that related to N.B. and his girlfriend. Then, in May 2021, the Department received another intake based upon a physical altercation between Appellant and C.Z. at a convenience store. The police were called, and C.Z. was arrested. He was subsequently convicted of assault family violence and resisting arrest as a result of the incident. The altercation occurred in the presence of the four youngest children, who were crying and scared at the time.

The Department instituted a safety plan for the family. However, Appellant and C.Z. failed to abide by the conditions of the safety plan, and the children were subsequently removed from their parents' care. During the investigatory stage of the case, the Department's investigator had asked Appellant to submit to a drug test, but Appellant refused—as did C.Z. They denied any drug use. All six children were taken for a drug test at the time of removal. A.B., who was eleven years old and had been staying with her aunt, tested negative. Fourteen-year-old N.B. tested positive for marihuana. The other four children (a three-year-old, two-year-old twins, and a one-year-old) all tested positive for methamphetamine. Appellant and C.Z. submitted to drug testing twelve days later; they both tested positive for marihuana and methamphetamine. The father of N.B. and A.B. lived in Michigan, had been absent from their lives for years, and did not participate in the safety plan or the proceedings below.

After the children were removed, Appellant was ordered by the trial court to comply with the requirements set forth in her family service plan. Appellant was only partially compliant with the requirements of her family service plan. She failed to attend counseling, did not allow the Department to make unannounced visits at her home, and failed to obtain and maintain a lawful source of income. After completing an inpatient drug treatment program, she failed to follow through with outpatient aftercare as required. She tested positive for methamphetamine in June 2021, July 2021, November 2021, December 2021, January 2022, and May 2022, and she failed to submit to drug testing as requested during the intervening months. In June 2022, Appellant tested negative. However, in July 2022, she again failed to submit to testing. In September 2022, she tested positive for methamphetamine. The results of this final drug test, which was a hair follicle test that occurred less than two weeks prior to the commencement of trial, showed that Appellant was positive for methamphetamine at the level of 15,323 pg/mg. The level of

methamphetamine, and the fact that Appellant relapsed shortly after inpatient treatment and shortly before the commencement of trial, is particularly concerning.

Also concerning is Appellant's conduct with respect to N.B. After the children were removed from Appellant's care, N.B. was placed with fictive kin. This placement was going well for almost a year—at which time N.B. began having more contact with Appellant. The fictive kin grounded N.B., and he began speaking to Appellant more often. Appellant started picking N.B. up from school at lunch and smoking marihuana with him, causing him to miss classes after lunch. Appellant would also leave marihuana for N.B. to pick up in an alley near the home of the fictive kin.

The evidence shows that Appellant loves both N.B. and A.B. and that they loved and were bonded with her. However, other evidence shows that Appellant's conduct and relationship with her children was not appropriate and was not safe for the children. For example, N.B.'s fictive kin, with whom N.B. was placed for thirteen months—until Appellant interfered—and who had known N.B. his whole life, blamed Appellant for N.B.'s attitude changing for the worse. According to the fictive kin, if N.B. were to be placed with any of Appellant's relatives, Appellant would have access to N.B.

The fictive kin believed that N.B. would benefit from the termination of Appellant's parental rights. The Department's caseworker and the CASA representative each testified that it would be in the best interest of all of Appellant's children, including N.B. and A.B., for her parental rights to be terminated.

The Department's plan for A.B. was for her to remain in the care of her maternal aunt—with whom A.B. had been living even before she was officially removed from Appellant's care. The Department requested that the aunt be appointed as permanent managing conservator of A.B., and the trial court granted that request. The aunt testified that, at the time of trial, she did not seek to adopt

A.B. but only sought permanent managing conservatorship. The aunt provided A.B. with a safe and stable home, and A.B. was doing well there. The aunt did not believe that Appellant's parental rights should be terminated as to A.B. because A.B. wanted to maintain a relationship with Appellant.

The Department's plan for N.B. was less certain. After placement with his fictive kin ended, N.B. was moved to an emergency shelter in Houston, where he remained at the time of trial. N.B. was doing well at the shelter and had even been participating in therapy for the first time. N.B. wished to either remain at the shelter or be returned to Abilene. N.B. was resistant to the idea of adoption, but the Department's permanency supervisor indicated that N.B. was adoptable and that termination and closure would allow N.B. to be more receptive to the Department's endeavor of finding a permanent home for N.B. The record shows that N.B. was angry with Appellant because she continued to use methamphetamine and that he was indifferent to Appellant's rights being terminated.

The trial court, as the trier of fact, is the sole judge of the witnesses' credibility. *A.B.*, 437 S.W.3d at 503. We are not at liberty to disturb the determinations of the trier of fact as long as those determinations are not unreasonable. *J.P.B.*, 180 S.W.3d at 573. Giving due deference to the trial court, we hold that, based on the evidence presented at trial and the *Holley* factors, the trial court could reasonably have formed a firm belief or conviction that termination of Appellant's parental rights would be in the best interest of N.B. and A.B. *See Holley*, 544 S.W.2d at 371–72. Upon considering the record as it relates to the desires of N.B. (who loved Appellant but was indifferent to her rights being terminated), the desires of A.B. (who loved Appellant and wanted to maintain a relationship with her), the emotional and physical needs of N.B. and A.B. now and in the future, the emotional and physical danger to each child now and in the future, the parental abilities of those involved, the Department's plans for each child, the occurrence of domestic violence in the

presence of the children, Appellant's use of drugs in the presence of her children, Appellant's supplying N.B. with illegal drugs while this case was pending, and Appellant's continued use of methamphetamine, we hold that the evidence is legally and factually sufficient to support the trial court's finding that termination of Appellant's parental rights is in the best interest of both N.B. and A.B. *See id.* We defer to the trial court's finding as to the best interest of each child, *see C.H.*, 89 S.W.3d at 27, and we cannot hold in this case that the trial court's finding as to either child's best interest is not supported by clear and convincing evidence. Accordingly, we overrule both of Appellant's issues on appeal.

III. *This Court's Ruling*

We affirm the order of the trial court.

W. BRUCE WILLIAMS

JUSTICE

April 13, 2023

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.